PER CURIAM.
 

 The relator, Willie Francis, was convicted of the crime of murder and was sentenced to suffer the penalty of death. The
 
 *74
 
 Governor issued the death warrant on March 29, 1945, directing the sheriff to cause the sentence to he executed on the 3rd day of May 1946, between the hours of 12:00 o’clock noon and 3:00 o’clock p. m. The warrant directed and ordered the sheriff to cause the sentence to be carried out by electrocution, that is, by “causing to pass through the body of the said Willie Francis a current of electricity of sufficient intensity to cause death, and the application and continuance of such current through the body of the said Willie Francis until said Willie Francis is dead.” The warrant was worded according to articles 569 and 570 of the Code of Criminal Procedure, as amended by Act 14 of 1940, adopting electrocution as the method of executing a sentence of death.
 

 On the day set for the execution, May 3, 1946, between the hours of 12 :00 o’clock noon and 3 :00 o’clock p. m., Willie Francis was strapped in the electric chair and an attempt was made to electrocute him, but, because of some defect in the apparatus devised and used for electrocutions, the contrivance failed to function, and after an unsuccessful attempt to electrocute Francis he was removed from the chair. On that day, the Governor granted a reprieve until May
 
 9,
 
 1946, declaring that the ends of justice would be served if the execution of the death warrant should be stayed and a reprieve granted until May 9, 1946.
 

 On the 7th day of May, Willie Francis, represented by an attorney at law, filed a petition in the district court, setting forth substantially the facts which we have related and praying for a writ of habeas corpus to be directed to the sheriff to produce him, Willie Francis, in court and to show cause why he should not be released from custody. The judge of the district court denied the petition for a writ of habeas corpus. On the next day, May 8, 1946, Willie Francis, represented by two other attorneys at law, filed another petition in the district court praying for a writ of habeas corpus, directed to the sheriff, commanding him to produce Willie Francis before the court, to be released from custody. The judge of the district court again denied the petition for a writ of habeas corpus.
 

 On the same day, May 8, 1946, the relator filed a petition in this the supreme court, and on the next day filed another petition in this court, praying for writs of certiorari, prohibition, mandamus and habeas corpus. In his petitions to this court, the relator sets forth all of the facts which we have recited, and contends, as he contended in his petitions to the district court, that a refusal to grant him a writ of habeas corpus and to order his execution stayed would be a denial of due process of law and of the equal protection of laws, as guaranteed by the 14th Amendment of the Constitution of the United States and by Section 2 of Article I of the Constitution of this State. He contends further that he was electrocuted on May 3, 1946, and
 
 *75
 
 that, considering the ordeal to which he was subjected then, any further electrocution would constitute cruel and unusual punishment, in violation of Section 12 of Article I of the State Constitution, and would be violative also of Section 9 of Article I of the State Constitution, providing that no person shall be put in jeopardy of life or liberty twice for the same offense.
 

 In his petitions invoking the supervisory jurisdiction of this court the relator prays that the writs which he asks for be directed to the District Judge, to the Sheriff having the relator in custody, to the Governor of Louisiana, and the Lieutenant Governor, acting Governor .in the absence of the Governor from the state, to the Attorney General, and to the District Attorney who prosecuted the relator.
 

 Inasmuch as it was impossible for this court to give consideration to the petitions before the hour of 12 o’clock noon on May 9, 1946, the court requested the Lieutenant Governor, acting Governor, to grant a reprieve for a period not exceeding 30 days; and on that request the Lieutenant Governor, acting Governor, granted the reprieve until 12 o’clock noon, Friday, June 7, 1946. Meanwhile, copies of the petitions to this court were served upon or furnished to the officials to whom the relator asks to have the writs directed.
 

 Attached to one of the petitions of the relator, invoking the supervisory jurisdiction of this court, are certified copies of all of the proceedings had in the prosecution in the district court, including the original affidavit, the indictment, and so on down to and including the pronouncing of the death sentence. There is no irregularity shown in any of these proceedings. In fact the relator does not contend that there was any irregularity in the indictment, trial, conviction or sentence. His only complaint has reference to the intention of the executive authorities to make a second attempt to carry out the death sentence; and the reasons for his complaint are founded solely upon his having been placed in the electric chair and having been subjected to the attempt to electrocute him on May 3, 1946.
 

 The judge of the district court, in his answer or opposition to relator’s petitions, avers that the relator is not in the judge’s custody but in the custody of the sheriff, and therefore the relator shows no cause or right of action as to him, the judge. He avers that the execution of the sentence in this case is a matter vested exclusively in the province and authority of the executive department of the state, and in which the judiciary has no constitutional right to interfere, under the facts disclosed in the relator’s petition.
 

 An answer or opposition to the relator’s petitions was filed by the district attorney for himself and for the sheriff, and by an assistant attorney general for the state officials against whom the writs are asked for. In this latter answer or opposition it is ad
 
 *76
 
 mitted that the attempt was made to electrocute Willie Francis on May 3, 1946, in obedience of the death warrant, but it is averred that through some latent electrical defect in the apparatus, no electric current reached the body of Willie Francis and for that reason the sentence of death was not carried out. We have no other evidence, of course, as to whether an electric current did reach the body of Willie Francis. The important fact, however, is that a current of sufficient intensity to cause death, as required by the statute on the subject, and by the death warrant, did not pass through the body of Willie Francis. These respondents or opponents therefore aver that it is the duty of the Governor to have the death sentence carried out, his authority in that respect being subject only to the provisions of Section 10 of Article V of the Constitution, giving him authority to grant pardons or to commute sentences on the recommendation of the Board of Pardons or of any two members thereof. It is averred in this answer or opposition that the inhibition against the inflicting of cruel and unusual punishment, in Section 12 of Article I of the State Constitution, is a replica of the 8th Amendment of the Constitution of the United States, which is applicable to the Federal Courts; and that that amendment has been so construed by the courts that the phrase “cruel and unusual punishment” is not appropriate to the extraordinary circumstances of this case. Hence it is denied that the electrocution of Willie Francis would be cruel and unusual punishment by reason of the attempt to electrocute him made on May 3, 1946.
 

 The respondents or opponents deny also that to electrocute Willie Francis would violate the provision in Section 9 of Article I of the State Constitution declaring that no person shall be twice put in jeopardy of life or liberty for the same offense. Decisions are cited to support the proposition that the word “jeopardy,” as used in Section 9 of Article I of the Constitution, means the danger of a person’s being convicted twice for the same offense; hence it is argued that the guaranty against putting a person’s life or liberty in' jeopardy twice for the same offense has no application to the extraordinary happening in this case.
 

 Our conclusion is that the complaint made by the relator is a matter over which the courts have no authority. Inasmuch as the proceedings had in the district court, up to and including the pronouncing of the sentence of death, were entirely regular, we have no authority
 
 to
 
 set aside the sentence and release the relator from the sheriff’s custody. And the court certainly has no authority to pardon the relator or to commute his sentence. The only authority to grant a pardon or to commute a sentence is vested in the Governor; and his authority in that respect may be exercised only upon the recommendation of the Board of Pardons or of any two members thereof. It is so declared in Section 10 of Article V of the Constitution of this State.
 

 
 *77
 
 On the 14th of May 1946, after we had written our conclusion to refuse to grant the writs prayed for by the relator, and our reasons for that conclusion, he filed in this court a supplemental petition in which he again invokes the due-process clause in the 14th Amendment of the Constitution of the United States, and invokes the Sth Amendment, declaring “nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb”, and the 8th Amendment, declaring “nor (shall) cruel and unusual punishments (be) inflicted.”
 

 We have found already that there is no violation of the due process clause of the 14th Amendment involved in this case.
 

 With regard to the Sth Amendment and the 8th Amendment of the Constitution of the United States it is too well settled by the decisions of the Supreme Court of the United States to require citation of these decisions that neither the Sth nor the 8th Amendment has reference to proceedings in the state courts. The prohibitions contained in these amendments, in fact the prohibitions contained in the first ten amendments, were not designed as limits against the state governments in reference to their own citizens but as limits upon the Federal power only.
 

 For'.the reasons stated, the writs of certiorari, prohibition, mandamus and habeas corpus, applied for by the relator, are refused.