406 So.2d 1300 (1981)
STATE of Louisiana
v.
Kenneth LeCOMPTE, et al.
STATE of Louisiana
v.
Deborah EWING and Luke Dubaz.
Nos. 80-K-2213, 80-KA-2271.
Supreme Court of Louisiana.
May 18, 1981.
On Rehearing November 16, 1981.
*1301 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Robert Long, Michael Fanning and Louise S. Korns, Asst. Dist. Attys., for plaintiff-appellant.
Sheryl L. Jarvits, Joseph Beeler, James J. Hogan, Miami, Fla., Frank G. DeSalvo, Robert Zibilich, Edward M. Baldwin, New Orleans, William Moran, Miami, Fla., for Kenneth LeCompte et al.
William H. Slaughter, III, Noble, Slaughter, Clayton & Lorenz, New Orleans, for Deborah Ewing and Luke Dubaz.
WATKINS, Associate Justice Ad Hoc[*].
These are consolidated criminal appeals which involve the constitutionality of Louisiana Act No. 313 of 1979. Defendants in the first consolidated appeal (80-K-2213) are Kenneth LeCompte, John Lagrange, Pedro Rodrigues, G. Vera Martinez, and John M. Hirschler, and in the second consolidated appeal (80-KA-2271) defendants are Deborah Ewing and Luke Dubaz. The former defendants were proceeded against by bill of information for possession of 16,000 lbs. of marijuana, and the latter defendants were proceeded against by indictment for *1302 possession of cocaine and "related substances" in the amount of over 400 grams. Motions to quash were filed and granted in each of the two consolidated appeals. The State now appeals these rulings.
The charges against both sets of defendants involve the allegation that they violated Louisiana Act No. 313 of 1979, which is contained in the Revised Statutes of this state as LSA-R.S. 40:967 (E) through (G), which read as follows:
"E. (1) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses one hundred pounds or more, but less than two thousand pounds of marijuana, tetrahydrocannabinol or chemical derivatives thereof, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than ten years, and to pay a fine of not less than twenty-five thousand dollars.
(2) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses two thousand pounds or more, but less than ten thousand pounds, of marijuana, tetrahydrocannobinol or chemical derivatives thereof, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than fifteen years, and to pay a fine of not less than fifty thousand dollars.
(3) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses ten thousand pounds or more of marijuana, tetrahydrocannabinol or chemical derivatives thereof, shall be sentenced to serve a term of imprisonment at hard labor of not less than fifteen years, nor more than twenty years, and to pay a fine of not less than two hundred thousand dollars.
F. (1) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or related substances as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars.
(2) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses two hundred grams or more, but less than four hundred grams, of cocaine or related substances as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than thirty years, and to pay a fine of not less than one hundred thousand dollars.
(3) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses four hundred grams or more of cocaine or related substances as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than fifteen years, nor more than thirty years, and to pay a fine of not less than two hundred fifty thousand dollars.
G. (1) Except as provided in Paragraph (2) hereof, with respect to any person to whom the provisions of Subsections E and/or F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsections E and/or F.
(2) The district attorney may move the sentencing court to reduce or suspend the sentence of any person to whom the provisions of Subsections E and/or F are applicable who provides substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which he was convicted or to related crimes. The arresting agency shall be given an opportunity to be heard in reference to any such motion. The court may reduce or suspend the sentence if it finds that the defendant rendered such substantial assistance."
The motions to quash were founded upon the contention that the subject statute was unconstitutional. The arguments in support *1303 of this contention, stated briefly, were that: (1) The statute provides for cruel and unusual punishment contrary to the Eighth Amendment to the United States Constitution, and "cruel, excessive, or unusual punishment" contrary to the provisions of Article I, Section 20 of the Louisiana Constitution of 1974 because the penalties provided are unduly harsh and because no maximum is required for the mandatory fine. (2) The statute in permitting a reduction or suspension of sentence by the trial court, on motion of the district attorney, to one "who provides substantial assistance in the identification, arrest, or conviction of other parties or conspirators to the crime for which he was convicted or to related crimes", coerces a waiver of Fifth Amendment rights by giving legislatively sanctioned preference to one who engages in self-incrimination and, further, violates the doctrine of separation of powers by delegating some of the exclusive sentencing powers of the judiciary to the district attorney. (3) Subsection G(2) of the statute is impermissibly vague in its use of the term "substantial assistance" without providing any criteria by which it can be determined objectively as to when substantial assistance has been rendered.
By Act 313 of 1979, the Louisiana legislature amended LSA-R.S. 40:967 to provide rather severe mandatory penalties for the possession of large amounts of marijuana, cocaine or related substances. Defendants convicted under the most onerous provisions of this Act (possession of over 10,000 pounds of marijuana and over 400 grams of cocaine) are subject to a minimum term of fifteen years imprisonment without benefit of suspension, probation or parole and a minimum fine of $200,000 for marijuana and $250,000 for cocaine. LSA-R.S. 40:967(E), (F) and (G)(1). However, the district attorney is granted discretion to "move the sentencing court to reduce or suspend the sentence of any person to whom the provisions of Subsections E and/or F are applicable who provides substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which he was convicted or to related crimes." LSA-R.S. 40:967R.S. 40:(G). These provisions were patterned after a virtually identical Florida "trafficking" statute and were intended to halt the dramatic rise in drug smuggling along the Louisiana coast which was believed to have occurred as a result of the earlier Florida clampdown. Section 893.135, Florida Statutes (1979). Both legislative schemes seek to provide enforcement officials with an additional tool for obtaining the assistance of a defendant in the identification, arrest or conviction of those persons involved in the smuggling operations. The Florida Supreme Court upheld the constitutional validity of its statute in State of Florida v. Carlos M. Benitez and Esperanza Benitez, Fla., 395 So.2d 514, stating the legislative purpose as follows:
"Section 893.135 was enacted to assist law enforcement authorities in the investigation and prosecution of illegal drug trafficking at all levels of distribution, from the importer-organizer down to the `pusher' on the street. The harsh mandatory penalties of subsection (1), ameliorated by the prospect of leniency in subsection (3), were clearly calculated to provide a strong incentive for drug violators to cooperate with law enforcement authorities and become informers. No one argues that the elimination of illegal drug traffic is not a beneficial and worthwhile goal, or that the goals of this legislation are not meritorious."
We find the above statement of the Florida Supreme Court clearly sets forth the general purpose of the Louisiana legislature in enacting Act 313 of 1979, and we have no doubt that legislature was motivated by legitimate, and indeed, wise and proper considerations, in view of the substantial increase in drug smuggling activities along the Louisiana coast.

EXCESSIVE PUNISHMENT
However commendable the legislative purpose, we find the penal portion of the statute (Subsections E and F) unconstitutionally provides for a minimum fine with no maximum, our decision in State v. *1304 Goode, 380 So.2d 1361 (La.1980) being almost directly in point. Goode likewise involved a statute (LSA-R.S. 14:50.1) based upon a very commendable policy, the desire to deter crimes against the person of individuals age sixty-five or older. In Goode the statute provided a minimum term of imprisonment but no maximum and was held to provide an excessive punishment, and hence to violate this state's constitutional prohibition of "excessive punishment" as found in Art. 1, Sec. 20, Louisiana Constitution of 1974. The constitutionality of the punishment in Goode was, as in these cases, challenged on motion to quash. Stating that it would be possible for a trial court to impose a term of imprisonment grossly disproportionate to the severity of the crime, we were compelled to declare the statute invalid in that case as providing for an "excessive" punishment contrary to the state's Constitution.
In the present case, it takes only a little imagination to think of a fine that would be grossly disproportionate to the offense prohibited, especially in view of the fact that the statute in its various gradations carries with it a term of imprisonment which the court is required to impose on top of the unlimited maximum of the fine. However despicable trafficking in drugs, and however admirable the legislative purpose in seeking to put an end to or even a partial cessation of the practice, we cannot uphold a statute that permits an unlimited fine, especially as we have struck down a somewhat similar statute in State v. Goode, supra on the ground that it violated the excessive punishment clause of this state's Constitution.
Defendants contend that sentences mandated by Subsections (E), (F) and (G) are unduly harsh and, therefore, constitute "cruel and unusual" punishment contrary to the Eighth Amendment to the United States Constitution, and "Cruel, excessive or unusual" punishment contrary to Article 1, Section 20 of the Louisiana Constitution of 1974. The defendants argue that under the standards set forth in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the punishment under the subject statute is grossly disproportionate to the severity of the offense. In view of the gross social evil resulting from the increased trafficking in drugs in this state, we cannot find that the punishment provided in this statute is, at least facially, disproportionate to the offense. In State v. Mallery, 364 So.2d 1283 (La.1978) we declared:
"According to the defense a guarantee that the sentence be proportioned to the offense is to be found in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Such a proposition is in the first instance a matter which falls squarely within the constitutional prerogative of the Legislature. Except as limited by the constitution its authority is plenary. Its determination is clothed with a presumption of constitutionality which persists until a finding is made, supported by adequate evidence, that the enactment prescribing punishment has transcended the limitation on legislative power set forth in constitutional enactments of equal or superior dignity. La. Const. arts. I, II, III & V; La.Civil Code art. 1."
(364 So.2d 1283, 1284, 1285)
We, therefore, find the statute to be unconstitutional only insofar as it provides no maximum fine, and sever those portions of the statute that provide the minimum fine, thus permitting to remain only that portion providing for a term of imprisonment.[1] With the unconstitutional minimum fine excised, the remainder of the statute still accomplishes the legislative purpose, thus fulfilling the requirements of severability. State v. Johnson, 343 So.2d 705 (La.1977).

*1305 SELF-INCRIMINATION
Defendants contend that conditioning their right to relief from the severe mandatory sentences imposed under LSA-R.S. 40:967 (E) and (F) upon their providing "substantial assistance in the identification, arrest or conviction of other parties" as set forth in Subsection 967 (G) (2), coerces a waiver of the Fifth Amendment privilege against self-incrimination by giving legislatively sanctioned preference to one who engages in self incrimination. While clearly the "substantial assistance" provision of this statute is designed to encourage the convicted defendant to cooperate with the authorities, the statute is not compulsory, and it is reasonable to assume that a defendant could furnish "substantial assistance" in the identification of other parties without incriminating himself in acts other than those for which he already stands convicted.[2] As these cases are before us on Motions to Quash and there has been neither a specific claim of privilege nor a hearing as to the merits of such a claim, the defendants are in effect contending that the "substantial assistance" provisions of this statute necessarily undermine any defendant's privilege against self-incrimination. Stated another way the defendants argue that because non-cooperating defendants are punished more severely, the "substantial assistance" provision clearly poses a threat of coercing waiver of the defendants' privilege. We do not agree as we find that the provisions of Subsection (G) (2) can be met without a defendant having necessarily to relinquish Fifth Amendment rights.
Even in cases where a defendant's claim of privilege is reasonable, the use of the "substantial assistance" provision as a prerequisite to leniency in sentencing need not work to penalize the defendant for asserting his privilege. The benefits of Subsection (G) (2) could be obtained by a cooperating defendant in a manner consistent with constitutional law regarding assertion of *1306 the self-incrimination privilege, since a valid claim of the privilege could be overcome with a grant of immunity from further prosecution. See Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980).[3]
Accordingly, we hold that the statute as it stands does not offend the defendants' rights against self-incrimination and is, therefore, constitutionally valid.

SEPARATION OF POWERS
Defendants contend that the "substantial assistance" provisions of LSA-R.S. 40:967 (G)(2) strips the judiciary of its traditional sentencing discretion by delegating a portion of this discretion to the district attorney. They claim that this delegation of judicial power to the executive branch constitutes a violation of the doctrine of separation of powers enunciated in Art. 2, Sec. 2 of the Louisiana Constitution of 1974.
As stated earlier, the newly-enacted "trafficking" provisions of LSA-R.S. 40:967 impose harsh mandatory minimum prison terms and fines without suspension or reduction for individuals convicted for the possession of large amounts of cocaine or marijuana. Maximum terms of imprisonment are also provided by the statute, thus leaving the sentencing judge free to impose, within the specified range, any term of imprisonment (we find the failure to provide a maximum fine unconstitutional). The limitation in this statute of the court's authority to suspend the sentence does not violate Art. 2, Sec. 2 of our Constitution, since the legislature may constitutionally limit the discretion of the courts to impose sentence. State v. Normand, 285 So.2d 210 (La.1973). The basic sentencing provisions of the statute, absent Subsection (G)(2), do no more than is constitutionally permitted.
Subsequent to conviction, Subsection (G)(2) grants the district attorney the discretion to move the sentencing court to reduce or suspend the sentence of any person who provides substantial assistance. Thus, it is argued, that as to defendants who attempt to provide assistance the range of possible sentences lies, at least initially, within the discretion of the district attorney. Once the district attorney has moved for the reduction or suspension, the decision as to whether or not to grant the reduction or suspension is by the statute solely within the court's discretion. The final or ultimate decision, therefore, rests not with the district attorney, but with the courts. While it is true that this provision of the statute does not permit the courts to act on their own motion, the effect of this provision is to broaden the sentencing discretion of the courts under the full statute. As the basic limitation (mandatory minimum sentence without authority to suspend) of the sentencing discretion of the courts is constitutional (State v. Normand, supra,) the conditional removal of that limitation cannot be considered unconstitutional.
We have also considered a question not raised by defendants in brief: Does the statute grant to the courts the power to commute sentences, which is a power limited by the Louisiana Constitution to the governor alone?
The governor is granted the power to commute sentences by Art. 4, Sec. 5 of the Louisiana Constitution of 1974. The pertinent portion of the cited Article and Section reads as follows:
"(E) Pardon, Commutation, Reprieve, and Remission; Board of Pardons.
(1) The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those voncited of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without *1307 a recommendation of the Board of Pardons and without action by the governor.
(2) The Board of Pardons shall consist of five electors appointed by the governor, subject to confirmation by the Senate. Each member of the board shall serve a term concurrent with that of the governor appointing him."
Although the language of the comparable provision of the Louisiana Constitution of 1921 differed, the meaning of the comparable provision (Art. V, Sec. 10) was for purposes of our consideration identical: The governor on recommendation of the Board of Pardons (or, under the 1921 Constitution, the lieutenant governor, attorney general, and the trial judge, or any two thereof) may commute sentences. The constitutional grant of the power to commute sentences to the governor (on recommendation of the "Board of Pardons" or any two members thereof) was held by this Court to be an exclusive grant to the governor of the power to commute sentences in State ex rel. Francis v. Resweber, 212 La. 143, 31 So.2d 697 (1947), preventing the courts of this state from exercising the power to commute. As the grant of the power to the governor on recommendation of the Board of Pardons to commute sentences is not narrowed under the Constitution of 1974, and as the Convention that drafted that Constitution had ample opportunity to grant a similar power to the judiciary, independent of the governor's power, had it wanted to do so, Resweber is still clearly the law, and the courts of this state are without power to commute sentences as a matter of constitutional doctrine.
We must then address the question of whether or not the restriction of the power to commute sentences to the governor, likewise restricts the power to "reduce" sentences to the governor, using the word employed by the statute under consideration. As used in criminal law, the word "commutation" is defined as follows in Black's Law Dictionary (4th ed. 1951):
"The change of a punishment from a greater to a less; as from hanging to imprisonment."
Clearly, a reduction of sentence by the judiciary under LSA-R.S. 40:967 (G)(2) is a commutation of the sentence that runs counter to constitutional limitation of the power to commute to the governor. The courts of this state cannot constitutionally reduce or commute a sentence. Since the statute permits a reduction or commutation of a sentence by the judiciary, it may be violative of this state's constitution, and of the constitutional doctrine of separation of powers.
The Code of Criminal Procedure in Art. 881 permits the trial court to "amend or change" a sentence prior to the beginning of its execution. In language in Comment (a) under that article the redactors state that reduction of sentence after the beginning of its execution should be impermissible, as to so permit would virtually constitute the trial judge as a "`one man pardon board'". The language of that comment was quoted by this Court with approval in State v. Battaglia, 377 So.2d 264 (La.1979), we thereby indicating that we, as a matter of judicial policy as well as constitutional doctrine and statutory policy, will not permit the judiciary to reduce sentence after its execution has commenced.
The statute under consideration, LSA-R.S. 40:967 (G)(2) permits a reduction of sentence that could be construed to be granted to the courts for a period extending both before and after the commencing of execution of sentence. If the statute is so interpreted, it is clearly unconstitutional, as it infringes upon the exclusive grant to the governor of the power to reduce or commute sentences after the execution of the sentence begins. Thus, if so read, it would violate the doctrine of separation of powers as found in Art. 2, Sec. 2. Louisiana Constitution of 1974.
However, if a statutory provision is susceptible of both a constitutional and an unconstitutional interpretation, it must be interpreted so that its constitutionality will be sustained. The legislature is presumed not to intend to enact an unconstitutional statute. 16 C.J.S. Constitutional Law, Sec. *1308 98. Thus, we must interpret LSA-R.S. 40:967 (G)(2) to permit a reduction of sentence only until such time as the execution of sentence has begun. Thus, read, the statute is constitutionally valid.

DUE PROCESSVAGUENESS
Defendants contend that LSA-R.S. 40:967 (G)(2) is unconstitutionally vague in its use of the term "substantial assistance" in prescribing the prerequisites for a defendant to obtain leniency, since this section does not prescribe any criteria by which it can be determined objectively as to when substantial assistance has been rendered. Defendants argue further that because of the failure of the statute to afford any guidance as to when "substantial assistance" has been provided, it allows for arbitrary enforcement and unreasonable application in violation of their federal and state guarantees of due process of law.
In order to satisfy the constitutional requirements of due process a statute creating or defining an offense and fixing the punishment therefor must be sufficiently explicit in its description of the acts, conduct or conditions required or forbidden, to prescribe the elements of the offense with reasonable certainty, fix an ascertainable standard of guilt, and make it known to those to whom it is addressed what conduct on their part will render them liable for its penalties, and not be so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. 16A C.J.S. Constitutional Law, Sec. 580, State v. Baker, 359 So.2d 110 (1978). There is no claim that the definition of the offense or penalties provided are unclear, but the effect of a defendant providing "substantial assistance" can have a direct bearing on the extent or severity of the punishment imposed. We believe, therefore, that the stated principles regarding due process standards for criminal statutes must be applied.
The phrase "substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which he was convicted or related crimes" is sufficiently definite in the context of the statute taken as a whole. We find the language of the provision sets forth the requirements for leniency with as much exactitude as it is reasonably possible for a statute to do, and that the provision is susceptible of common understanding and can, therefore, be uniformly applied.
We, therefore, find the statute constitutional in all respects except in that part which imposes a minimum fine and no maximum, and strike down that part. We further find that the statute must be so interpreted that a reduction of sentence cannot be granted by the courts of this state after the commencement of execution of sentence.
We vacate the granting of the motions to quash in the two individual cases now before us, and remand the cases for further proceedings in accordance with the views expressed in this opinion.
MOTIONS TO QUASH DENIED.
DIXON, C. J., concurs in part and dissents in part, agreeing that the provisions concerning the fine should be excised and that the statute is not unconstitutionally vague and does not violate the doctrine of separation of powers, but otherwise disagreeing with the conclusion that there is a conflict with the governor's power to commute sentences.
WATSON, J., concurs in part and dissents in part, and assigns reasons.
LEMMON, J., concurs and assigns reasons.
WATSON, Justice, concurring in part and dissenting in part.
I concur with the majority that the sentencing provisions must be restricted by excising the unconstitutional penalty of unlimited fines.
However, R.S. 40:967 G (2) is also unconstitutional in giving the district attorney a judicial role in sentencing, and should be excised in that respect.
Therefore, I concur in part and dissent in part.
*1309 LEMMON, Justice, concurring.
I agree with the principal holding in this case, which is that the provisions of R.S. 40:967 E, F and G as to the fine must be struck because no maximum fine has been established. Therefore, the trial court's ruling on the motion to quash must be reversed in all respects except insofar as the ruling strikes the fine from the statute.
The constitutionality of a statute which places exclusive authority in the district attorney to move for suspension or reduction of a mandatory minimum sentence presents more difficulty, but need not be decided in this case. R.S. 40:970 G (2) is not facially unconstitutional, because the statute can be construed extensively to be constitutional. That is, since the statute expressly authorizes the trial court to grant a suspension or reduction of the mandatory minimum sentence when the defendant had provided substantial assistance in the identification, arrest or conviction of other drug violators, then the statute may be construed to authorize the trial court to do so, not only on the district attorney's motion, but also on the motion of the defendant or on the court's own motion.[1] I would leave this question to be decided in a factual context, rather than on a motion to quash.
I would also leave for adjudication in future cases the question of whether the Legislature can authorize the trial court to reduce a sentence after execution has begun. While I have serious doubts that such action constitutes commutation of the sentence or invades any exclusive power of the governor, the language of the majority opinion is not necessarily to the holding, and I expressly decline to subscribe to that language.

ON REHEARING
CALOGERO, Justice.[*]
On original hearing, we considered the constitutionality of La.R.S. 40:967(E)-(G), which imposed increasingly heavy mandatory penalties for possession of large amounts of marijuana, cocaine or their derivatives. We held that the penalty portions of the statute, which imposed minimum fines without specifying maximum fines, offend the constitutional prohibition against excessive punishment and were therefore invalid, with those provisions nonetheless severable.
We found the remainder of the statute, including La.R.S. 40:967(G)(2) constitutional, but only after interpreting that section to permit the reduction or suspension of sentence only until such time as the execution of sentence has begun. Upon application by LeCompte and his codefendants,[1] we granted a rehearing because of our concern that our treatment of the challenge to the statute based upon separation of powers requires additional consideration.
This concern on rehearing focuses upon the role given the district attorney by La. R.S. 40:967(G)(2). The statute allows the district attorney to move the sentencing court to reduce or suspend the sentence of a convicted defendant who provides substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which he was convicted, or to related crimes. Defendants argue that allowing the district attorney that particular statutory role in sentencing violates Louisiana's constitutional separation of powers.
The interpretation of La.R.S. 40:967(G)(2) urged upon us by defendants is indeed constitutionally *1310 suspect as being in violation of Louisiana's constitutional separation of powers article. Under that interpretation, a person convicted of possession of 100 pounds of marijuana or 28 grams of cocaine shall be sentenced to a minimum prison term of five years at hard labor[2] and the adjudication of his guilt or the imposition of his sentence shall not be suspended, deferred or withheld, nor shall he be eligible for probation or parole, with this exception: The trial judge may reduce or suspend the sentence only if the district attorney first moves for such reduction or suspension, alleging that the defendant has provided substantial assistance, and the trial judge finds that defendant has rendered substantial assistance.
On original hearing we concluded that Louisiana's constitutional separation of powers was not offended, even conceding (or assuming) that a fully discretionary motion by the district attorney is required to trigger the trial judge's exercise of the discretion afforded him by the statute to reduce or suspend the sentence. We reasoned that the final or ultimate decision to reduce or suspend the sentence rests not with the district attorney but with the courts. This reason for finding that the statute did not violate Louisiana's separation of powers was the identical one given by the Florida Supreme Court in interpreting an almost identical statute under a similar separation of powers attack. State v. Benitez, 395 So.2d 514 (Fla., 1981). Benitez, in turn, relied upon a 1976 decision of the New York Court of Appeal. People v. Eason, 40 N.Y.2d 297 at 301, 386 N.Y.S.2d 673 at 676, 353 N.E.2d 587 at 589 (1976):
"So long as a statute does not wrest from courts the final discretion to impose sentence, it does not infringe upon the constitutional division of responsibilities."
We are not persuaded by the logic of those opinions. Giving the trial judge the final authority to impose a reduced or suspended sentence, if the district attorney is his discretion decides to recommend such, is hardly a good argument that the judiciary's power to sentence following conviction is not invaded by the district attorney. More persuasive in our view are Esteybar v. The Municipal Court for the Long Beach Judicial District of Los Angeles County, 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140 (1971), and The People v. The Superior Court of San Mateo County, Lawrence On Tai Ho, Real Party in Interest, 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (1974).
In Esteybar, the defendant was charged with possession of marijuana, an offense which in the absence of any prior felony convictions may be treated as either a felony or a misdemeanor. The statute, however, dictated that the magistrate could proceed with the offense as a misdemeanor only after first obtaining the consent of the prosecuting attorney. The California Supreme Court found that this statute violated the doctrine of separation of powers set forth in the California Constitution, concluding among other reasons:
"Under our system of separation of powers, we cannot tolerate permitting such an advocate [the prosecuting attorney] to possess the power to prevent the exercise of judicial discretion as a bargaining tool to obtain guilty pleas." 95 Cal.Rptr. 524, 485 P.2d at 1144.
The court concluded that the defendant was surely entitled to have an independent determination of whether he should be held to answer on a felony or misdemeanor and this was not possible when the exercise of judicial discretion depended upon the pleasure of the executive.
The On Tai Ho case also involved the constitutionality of a prosecutorial veto over an exercise of judicial power. At issue was a California Penal Code provision which required the consent of the prosecutor before a trial judge might order that a defendant charged with a narcotic offense be diverted into a pretrial program for treatment and rehabilitation. The court *1311 quoted an earlier decision, People v. Tenorio, 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993 (1970) which had said:
"The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interest of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise."
The court then held that the provision being challenged was an impermissible invasion of the constitutional province of the judiciary and therefore violative of the constitutional requirement of separation of powers.
Louisiana's Constitution divides the state's governmental powers among three distinct branches: legislative, executive and judicial. La.Const. art. 2 § 1. The Constitution further provides that these branches shall be separate, for in Article 2, § 2, the Constitution states: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." This division creates in the judicial branch powers with which the legislative and executive branches shall not interfere. Singer Hutner Levine Seeman & Stuart v. La. State Bar Ass'n, 378 So.2d 423 (La., 1979). The Constitution further states: "The judicial power is vested in a supreme court, court of appeal, district court, and other courts authorized by this article." La.Const. art. 5 § 1. One of the traditional, inherent and exclusive powers of the judiciary is the power to sentence.
In this reconsideration of the separation of powers issue, we are not satisfied with our earlier reasons. If the trial court's decision whether to reduce or suspend the sentence is conditioned upon the district attorney's arbitrary discretion, admittedly coupled with his having to prove defendant's substantial assistance in the identification, arrest or conviction of other parties, the consequent sentencing (reduced or not, suspended or not) is at least as much the discretionary choice of the district attorney as that of the trial judge. Actually it is more so the choice of the district attorney if his motion is an outset requirement in order to permit the sentencing judge's considering a reduced or suspended sentence. Under Louisiana's constitutional separation of powers, the district attorney, a member of the executive branch, should have no role in sentencing, an obvious judicial function.
As we stated above, if the sentence is interpreted as defendant urges, it would likely violate the separation of powers articles of the Louisiana Constitution. However, the statute is subject to more than one reasonable interpretation and we should interpret statutes in such a way as to uphold their constitutionality. State v. Newton, 328 So.2d 110 (La.1975) (on rehearing). This is so because the Legislature is presumed to have acted in a constitutional manner. Newton, supra. On this reconsideration, we find that the statute can reasonably be interpreted as permitting suspension/reduction of sentence in instances other than where the district attorney so moves.
Basically, La.R.S. 40:967(E)-(F) provides for substantial minimum jail sentences for the knowing or intentional possession of large quantities of marijuana or cocaine. Subsection (G)(1) of the statute mandates that these jail terms shall not be suspended, deferred or withheld, nor shall the convicted defendant be eligible for probation or parole prior to serving the minimum sentence, except as provided in La.R.S. 40:967(G)(2). That portion of the statute [Subsection (G)(2)] consists of three sentences. The first sentence provides that the district attorney may move the sentencing court to reduce or suspend the sentence of persons to whom the provisions of (E) and/or (F) are applicable if such persons provide substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which they were convicted or to related crimes. A second sentence gives the arresting agency an opportunity to be heard with reference to any reduction or suspension. The third *1312 sentence states that the court may reduce or suspend the sentence if it finds that the defendant has rendered substantial assistance. Certainly, one reasonable interpretation would be that, primarily because of the order in which the sentences appear, the district attorney must first exercise his discretion to move for a reduction or suspension before the court is afforded any discretion to reduce or suspend sentence. This is the interpretation espoused by defendants at bar. However, that interpretation is not the only reasonable one that can be given to Subsection (G)(2).
Another reasonable interpretation is that the court is very specifically given the discretion to reduce or suspend sentence if it finds that the defendant has rendered substantial assistance, etc. Although there also appears a specific provision for the district attorney to so move, the court's discretion and authority under this interpretation is express and not conditional. Since the court has the discretion to reduce or suspend sentence when the defendant has met the requirements of the statute, the court may do so on its own motion, or its ruling may be triggered by motion of either the district attorney or the defendant.[3]
We interpret the statute in accordance with the preceding paragraph and in so doing obviate a constitutional separation of powers problem. Under our interpretation, there is no exclusive authority in the district attorney and there is thus no invasion of the judge's sentencing powers. The statute is therefore constitutional.

DECREE
For the foregoing reasons, and for the other reasons expressed in our original opinion not inconsistent herewith, the trial judge's ruling on the motion to quash is reversed and the case is remanded to the trial court.
ORIGINAL DECREE REINSTATED; MOTION TO QUASH DENIED.
DIXON, C. J., dissents with reasons.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents for reasons assigned by DIXON, C. J.
DIXON, Chief Justice (dissenting)
I respectfully dissent, believing R.S. 40:967 G does not authorize the exercise of the judicial power by the district attorney, and therefore does not violate the doctrine of separation of powers. The provisions for unlimited fines are probably unconstitutional on the face of the statute.
MARCUS, Justice (dissenting).
Since the final or ultimate decision to reduce or suspend the sentence rests with the court and not the district attorney, I do not consider that the statute in question violates the constitutional requirement of separation of powers. Moreover, I disagree with the interpretation of the statute by the majority. Accordingly, I respectfully dissent.
NOTES
[*] Judges Frederick S. Ellis, Luther F. Cole and J. Louis Watkins, Jr. of the First Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Watson, and Lemmon.
[1] Act 313 of 1979 contained the following severability clause:

"Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Act which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Act are hereby declared severable."
[2] In State v. Benitez, supra, the Florida Supreme Court cogently answered the contention that a similar provision was in violation of Fifth Amendment rights as follows:

"Finally, the appellees argue that section 893.135 coerces a defendant into relinquishing his fifth amendment privilege against self-incrimination by denying him sentencing leniency unless he cooperates with the authorities. We reject this argument, primarily because it depends on unwarranted assumptions about the nature of the informer's disclosures. Nothing in the statute suggests that "substantial assistance" must incriminate the defendant of crimes other than those for which he has already been convicted (and for which no fifth amendment privilege is obviously necessary). We acknowledge the risk of prosecution in other jurisdictions. Nonetheless, a defendant need not invoke subsection (3), as nothing in the statute is compulsive. Putting a defendant to a difficult choice is not necessarily forbidden by the fifth amendment. See, e.g., Corbitt v. New Jersey, [439 U.S. 212,] 99 S.Ct. 492, 497, [58 L.Ed.2d 466] (U.S.1978) C'[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid.' (footnote omitted)); Bordenkircher v. Hayes, 434 U.S. 357, [98 S.Ct. 663, 54 L.Ed.2d 604] (1978); McGautha v. California, 402 U.S. 183, [91 S.Ct. 1454, 28 L.Ed.2d 711] (1971). No constitutional deprivation results if a defendant elects to reap the benefits of subsection (3).
With respect to those cases which say that the trial courts may not enhance a sentence based on a defendant's failure to cooperate with the authorities, see United States v. Garcia, 544 F.2d 681 (3rd Cir. 1976); United States v. Acosta, 501 F.2d 1330 (5th Cir. 1974) (Gee, J., dissenting), adopted en banc, 509 F.2d 539 (5th Cir), cert. denied, 423 U.S. 891, [96 S.Ct. 188, 46 L.Ed.2d 122] (1975); United States v. Rogers, 504 F.2d 1079 (5th Cir. 1974). cert. denied, 422 U.S. 1042, [95 S.Ct. 2655, 45 L.Ed.2d 693] (1975), we believe that Roberts v. United States, [445 U.S. 552] 100 S.Ct. 1358, [63 L.Ed.2d 622] (U.S.1980), went a long way toward resolving this issue against appellees. The Court in Roberts concluded that the district court properly considered the defendant's refusal to cooperate as one factor in imposing consecutive sentences. Admittedly, a fifth amendment claim was not properly raised in Roberts and `would have merited serious consideration' if it had been. Id. at 1364. We conclude, however, that for fifth amendment purposes the situation in Roberts is distinguishable from that here. A sentence reduction obtained by a sentenced convict due to his cooperation is not tantamount to the enhancement of a sentence imposed on an unsentenced, but convicted defendant as a result of his lack of cooperation. The former is no different from a gratuitous sentence reduction offered to one already incarcerated who, even without statutory sanction, risks reincrimination in exchange for early release benefits."
[3] Though the Louisiana statutory scheme is phrased only in terms of affording leniency to a cooperating defendant (rather than punishing a non-cooperating one), the same principles and considerations expressed in Roberts are applicable.
[1] The fact that the Legislature has granted the trial court express authority to suspend or reduce the mandatory minimum sentence, upon a finding of defendant's "substantial assistance", and has expressly authorized the district attorney to file such a motion does not necessarily preclude the defendant or the court from filing such a motion.
[*] Consistent with the procedures utilized by this court in assigning Court of Appeal Judges to sit as Justices Ad Hoc in criminal appeals (see State v. Petterway, 403 So.2d 1157 (La., 1981)), applications for and consideration upon rehearing are entertained by the permanent court as was the case here.
[1] Codefendants with LeCompte are John LaGrange, Pedro Rodriguez, G. Vera Martinez and John V. Hirschler.
[2] The minimum sentence becomes longer as the quantity of contraband possessed increases. For possession of ten thousand pounds or more of marijuana, or four hundred grams or more of cocaine, the minimum sentence is fifteen years at hard labor.
[3] As Justice Lemmon noted in his concurring opinion on original hearing, the fact that the Legislature has granted the trial court express authority to suspend or reduce the mandatory minimum sentence upon finding that the defendant has rendered "substantial assistance," and has expressly authorized the district attorney to file such a motion does not necessarily preclude the defendant's filing such motions or the court's acting under the statute on its own motion.