490 So.2d 336 (1986)
STATE of Louisiana
v.
Eric MERCHANT and Robert Schaefer.
No. KA 85 1222.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied July 15, 1986.
*337 Walter Reed, Dist. Atty., Franklinton, for plaintiff-appellee State of La.
H.R. Alexander, Bogalusa, for defendant-appellant Eric T. Merchant and Robert W. Schaefer.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
GROVER L. COVINGTON, Chief Judge.
Eric Merchant and Robert Schaefer were charged by a single bill of information with possession of one hundred pounds or more of marijuana in violation of LSA-R.S. 40:964 and 966(E)(1). Defendants pled not *338 guilty and filed a motion to suppress the seized contraband. After denial of the motion to suppress, defendants waived trial by jury and were tried by a judge. Defendants were convicted as charged. Merchant was sentenced to a term of imprisonment at hard labor for five years without benefit of parole, probation, or suspension of sentence and ordered to pay a fine of $25,000.00 plus costs. Schaefer was sentenced to a term of imprisonment at hard labor for ten years without benefit of parole, probation or suspension of sentence and ordered to pay a fine of $25,000.00 plus costs.
From these convictions, Merchant and Schaefer appeal, urging six assignments of error:
(1) The trial court erred in denying defendants' motion to suppress because the officer who arrested defendants was without authority to make an arrest outside of his territorial jurisdiction.
(2) The trial court erred in denying defendants' motion to suppress because the detention and warrantless arrest of defendants and the seizure of their airplane was without probable cause.
(3) The trial court erred in denying defendants' motion to suppress because the general search warrant obtained was defective.
(4) The trial court erred in sentencing defendants pursuant to LSA-R.S. 40:966(F)(2) because that provision authorizes an unconstitutional violation of defendants' rights against self-incrimination.
(5) The trial court erred by sentencing Robert Schaefer to a term of imprisonment which was double in length to the term imposed against his co-defendant, Eric Merchant.
(6) The trial court erred by sentencing Robert Schaefer to a ten year term of imprisonment without benefit of parole, probation, or suspension of sentence as such term is illegally excessive under the provisions of LSA-R.S. 40:966(E)(1).
At approximately 9:15 p.m. on October 4, 1984, Charles Brumfield of the Franklinton Police Department observed a small airplane flying at an extremely low altitude. The aircraft, with its landing lights turned on, appeared to be headed in the direction of the Franklinton Airport. Officer Brumfield's suspicions were aroused by his observations for he had never before seen a plane land at the Franklinton Airport at that time of night. Accordingly, he proceeded to the airport to investigate.
Arriving at the airport first, Officer Brumfield waited for the plane to land. After the aircraft taxied to a stop near some fuel pumps, Officer Brumfield pulled his marked patrol car in front of the airplane, got out, and asked its two occupants, later identified as Robert Schaefer and Eric Merchant, for identification. Schaefer, the airplane's pilot, produced a Colorado automobile operator's license and the back portion of a pilot's license for identification. Although Schaefer maintained that he had arranged with airport personnel to buy fuel, none of the airport attendants on duty had a key to the fuel pumps or knew anything about Schaefer's intended purchase of fuel. When questioned about ownership of the plane, Schaefer said that he did not know who owned the aircraft. He remarked, "You know how it is, somebody drops you a few bucks, you don't ask questions, you just fly the plane and drop it off wherever they tell you." In addition, Schaefer described his travel itinerary as flying the plane to the "big airport" in New Orleans and leaving it.
Officer Brumfield's initial conversation with defendants served to intensify his suspicions that the small, twin engine aircraft was being used for illegal purposes. Capt. Jack Underwood of the Washington Parish Sheriff's Office was called to the airport to aid Brumfield's investigation. Capt. Underwood's efforts were also met by evasive and inconsistent responses. Schaefer acknowledged that he did not have a flight plan. Although Schaefer then maintained that the aircraft was owned by someone in California, he was unwilling to identify anyone who could verify his rightful possession of the plane.
*339 With the situation postured as an unsatisfactory stalemate, defendants accompanied Capt. Underwood to the sheriff's office. An application for search warrant was prepared by Capt. Underwood, approved by a neutral magistrate and executed by Capt. Underwood. Pursuant to the search warrant, two large bales of marijuana, composed of smaller packages wrapped with plastic tape, were recovered from the baggage compartment immediately behind the rear seats of the airplane. Stipulation at trial on the merits established the weight of each bale at 64.5 pounds.[1]
ASSIGNMENT OF ERROR NUMBER ONE:
By means of this assignment, defendants contend that their motion to suppress should have been granted because Officer Brumfield was without authority to stop or arrest them outside of his territorial jurisdiction.
At the hearing on the motion to suppress, a stipulation was entered into the record whereby the state acknowledged that the Franklinton Airport is not within the territorial limits of the City of Franklinton although the airport facility is owned and maintained by the City of Franklinton. The record also reveals that Officer Brumfield was on duty, located within his territorial jurisdiction, when he first observed defendants' aircraft. We find that the location of the stop is not of controlling significance in this case.
In State v. Bickham, 404 So.2d 929 (La.1981), the Louisiana Supreme Court construed La.C.Cr.P. art. 215.1 as authorizing an officer in close pursuit to leave the jurisdiction to make an investigatory stop, when, as herein, the officer initiated his pursuit for the purpose of stopping while within his jurisdiction. In addition, in the instant case, Capt. Underwood of the Washington Parish Sheriff's Office, operating within his territorial jurisdiction, arrived at the airport soon after Officer Brumfield's initial stop of defendants. More significantly, the Louisiana Supreme Court rejected defendant's contention in State v. Bickham that the remedy necessary for enforcement of the territorial jurisdiction rule is exclusion of reliable evidence produced as a result of arrests or stops initiated in good faith by an officer who began to act within his territorial limits.
For the foregoing reasons, this assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE:
By means of assignment of error number two, defendants urge that Officer Brumfield lacked probable cause to arrest them. Accordingly, they maintain that all evidence received subsequent to and as a result of their illegal arrests is inadmissible and should have been suppressed by the trial court. In support of this contention, defendants maintain that they were placed under arrest immediately upon deplaning from their small aircraft.[2]
La.C.Cr.P. art. 215.1 authorizes a law enforcement officer to make an investigatory stop when he "reasonably suspects" that a person is committing, has committed, or is about to commit an offense. Inherent in the officer's right to stop an individual and to demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of his cooperation. State v. Fauria, 393 So.2d 688 (La.1981).
Officer Brumfield acknowledged that he approached defendants with the intent of detaining them until his suspicions were resolved. The definition of arrest is keyed to the concept of restraint. *340 State v. Marks, 337 So.2d 1177 (La.1976). An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330 (La.1982). However, an investigatory stop is a complete restriction on liberty of movement for a time. A stopping for investigation is not a lesser intrusion because the restriction of movement is incomplete, but rather because it is briefer than an arrest. See, W. LaFave, Seizures Typology: Classifying Detention of the Person to Resolve Warrant, Grounds, and Search Issues, 17 U. Mich. J.L. Ref. 417 (1984).[3]
In ruling on the motion to suppress, the trial court took judicial notice of the conditions prevailing at the Franklinton Airport noting that it is a small, rural airport at which nighttime landings are extremely unusual. See, LSA-R.S. 15:422(6). This factor taken together with the extremely low altitude at which the aircraft was traveling, as appraised by an experienced law enforcement officer, provided justification to pursue a limited investigation. Thus, the time, place, and circumstances being what they were, it was proper for Officer Brumfield to approach and question defendants. This investigative approach was likely to confirm or dispel his suspicions quickly. If defendants' answers had raised no further suspicions, he should not have detained them. However, defendants' answers increased Officer Brumfield's suspicions. Answers to Brumfield's questions gave him cause to believe that defendants were engaged in illegal activities. The reasonable suspicion which had justified the initial detention ripened into probable cause. Probable cause was determined by the setting in which the encounter took place, together with the facts and circumstances known to Officer Brumfield and Capt. Underwood from which they might draw conclusions warranted by their experience and training. See, State v. Johnson, 422 So.2d 1125 (La.1982). The officers' articulable observations included: knowledge that at the rural Franklinton airport nighttime landings are unusual; Schaefer's failure to produce a valid pilot's certificate; defendants' unfounded allegations of legitimate prior communication with airport personnel; failure to have a flight plan; unwillingness to identify the owner of the aircraft or his address; inconsistent, improbable and unverifiable explanation of rightful possession of the aircraft; and improbable explanation of destination. In these details, the officers recognized a behavior pattern typical of those who transport contraband by air.
Although probable cause existed, the officers were required to obtain a search warrant before searching the aircraft unless excused by exigent circumstances. By means of assignment of error number three, defendants urge that the affidavit in support of the search warrant obtained by the officers failed to establish probable cause to support a belief that the airplane contained contraband. In addition, defendants contend that the search warrant did not particularly describe the object(s) to be seized.
Our review of the affidavit in support of the search warrant, which details much of the officers' investigation, amply supports probable cause to believe that the seized aircraft contained contraband. General warrants, of course, are prohibited by the Fourth Amendment of the United States Constitution. That particular problem is addressed by requiring a particular description of the things to be seized. See, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In Louisiana, the search warrant should particularly *341 describe the place to be searched and the persons or things to be seized. La. Const. art. I, section 5 (1974); La.C.Cr.P. art. 162.
However, search warrants should be tested by common sense and realistic interpretation without elaborate specificity. State v. Waterloo, 447 So.2d 561 (La.App. 1st Cir.1984). Applications for search warrants are normally drafted by non-lawyers in the midst and haste of a criminal investigation. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).
The language used in the instant warrant is facially sufficient.[4] Courts are least demanding when the objects described are contraband which may be described generally as to its nature or character. See, 2 W. LaFave, A Treatise on the Fourth Amendment, Ch. 4, § 4.6 (1978) at pp. 101-102. The officers were required to make determinations of fact, rather than of opinion, in deciding what items to seize. It was the most reasonable identification that could be used without naming every possible type of controlled dangerous substance which might be transported by aircraft.
Moreover, there exists considerable authority to support search of an aircraft, without first obtaining a search warrant, under the "automobile exception" of the Fourth Amendment warrant requirement.[5]See, e.g., United States v. Nigro, 727 F.2d 100 (6th Cir.1984); United States v. Rollins, 699 F.2d 530 (11th Cir.), cert. denied, 464 U.S. 933, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).
Finding the trial court correctly denied defendants' motion to suppress the seized marijuana, these assignments of error are without merit.
ASSIGNMENT OF ERROR NUMBER FOUR:
By means of this assignment, defendants contend that the trial court erred by sentencing them pursuant to LSA-R.S. 40:966(F)(2) because that provision authorizes an unconstitutional violation of defendants' rights against self-incrimination.[6]
By Act 313 of 1979, the Louisiana legislature amended LSA-R.S. 40:967 to provide rather severe mandatory penalties for possession of large amounts of marijuana, cocaine or related substances. These provisions were patterned after a Florida trafficking statute and were intended to halt the dramatic rise in drug smuggling in Louisiana. See, State v. LeCompte, 406 So.2d 1300 (La.1981). By Act 800 of 1981, marijuana was reclassified as a Schedule I controlled dangerous substance. The relevant statutory provisions prohibiting possession of large amounts of marijuana were reenacted by adding subsections D, E, and F to section 966 of Title 40 of the Louisiana Revised Statutes.
Defendants contend that conditioning their rights to relief from the severe mandatory sentences imposed under LSA-R.S. 40:966(E) upon their providing "substantial assistance in the identification, arrest or conviction of other parties or conspirators to the crime for which [they] were convicted or to related crimes" as set forth in subsection (F)(2) coerces a waiver of the Fifth Amendment privilege against self-incrimination. We disagree.
In State v. Lecompte, supra, the Louisiana Supreme Court cogently answered the contention that an identically worded provision, *342 LSA-R.S. 40:967(G)(2), was in violation of the Fifth Amendment. Citing a Florida Supreme Court decision, State v. Benitez, 395 So.2d 514 (Fla.1981), the Louisiana Supreme Court noted:
... Nothing in the statute suggests that "substantial assistance" must incriminate the defendant of crimes other than those for which he has already been convicted (and for which no fifth amendment privilege is obviously necessary). ... [N]othing in the statute is compulsive. Putting a defendant to a difficult choice is not necessarily forbidden by the fifth amendment.
406 So.2d 1300, 1305, n. 2.
The statute as it stands does not offend defendants' rights against self-incrimination. Accordingly, this assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS FIVE AND SIX:
By these assignments, defendant Schaefer attacks the length and condition of the term of imprisonment imposed against him. By assignment of error number five, he urges that the ten year term of imprisonment, which is double in length to the sentence imposed against his co-defendant, Eric Merchant, is constitutionally excessive as he and Merchant were equally culpable with respect to the instant offense.
Initially, we note that there is nothing in the law that requires a sentencing judge to treat co-defendants equally. State v. Rogers, 405 So.2d 829 (La.1981). To the contrary, the sentencing judge is required to exercise his discretion according to the individualized circumstances of the offense and of the offender. State v. Sepulvado, 367 So.2d 762 (La.1979).
Review of the record indicates that the trial court ordered a presentence investigation report and afforded defendant an opportunity to rebut or explain prejudicial information in that report. Defendant apparently presented no mitigating facts to the trial judge; none are apparent from the circumstances of this case.
The record reveals that the trial judge carefully considered Schaefer's presentence investigation report when imposing sentence. In pertinent part, the trial judge noted:
"[Schaefer] has been involved in the drug scene apparently for sometime, and he really doesn't learn his lessons even though he gets caught and won out in his cocaine endeavor. He comes right back and tries to go through ... Washington Parish and do the same thing."
The Louisiana Supreme Court has held that the trial court's consideration of criminal activity is not limited to convictions but may properly include history of prior delinquency or criminal activity. See, State v. Brown, 410 So.2d 1043 (La.1982). The instant presentence investigation report, which detailed Schaefer's extensive ties to trafficking in controlled dangerous substances, was based on conclusions rationally derived from information from identifiable sources, including DEA authorities, and supports the substantial term of imprisonment imposed.
However, we do find merit to assignment of error number six. By means of that assignment, Schaefer urges error from the restrictions placed on his imprisonment which require that the full ten year term be served without benefit of probation, parole, or suspension of sentence. LSA-R.S. 40:966(E)(1) provides, in pertinent part, that one guilty of possession of "one hundred pounds or more, but less than two thousand pounds, of marijuana... shall be sentenced to serve a term of imprisonment at hard labor of not less than five years nor more than fifteen years." LSA-R.S. 40:966(F)(1) does bar suspension or deferral of sentencing or eligibility for probation or parole, but only "prior to serving the minimum sentences provided by Subsection E." Accordingly, the trial court erred by restricting Schaefer's eligibility for parole for a period of time exceeding five years, the minimum sentence provided by LSA-R.S. 40:966(E)(1).
Because sentencing discretion is involved in correction of Schaefer's sentence, his *343 sentence will be vacated and the matter will be remanded to the trial court for appropriate action. For the foregoing reasons, the convictions of Robert Schaefer and Eric Merchant are affirmed. The sentence of Eric Merchant is also affirmed. However, Robert Schaefer's sentence is vacated and that case is remanded to the district court for resentencing in accordance with the views expressed herein.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.
NOTES
[1] Testimony at trial also detailed the recovery of a large amount of similarly packaged marijuana discovered in a ditch at the Bogalusa Airport on the day following this incident.
[2] In ruling on whether a defendant's motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on that motion. This court may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222 (La.1979).
[3] In a recent United States Supreme Court case, the Court found that while the length of an investigatory stop is an important factor in determining the reasonableness of the stop, the courts must also consider the purposes to be served by the stop. In reviewing the length of a detention, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
[4] In pertinent part, the search warrant and accompanying affidavit authorize seizure of "any and all illegal narcotics" [which we view in its generic as opposed to its technical meaning] ... and any other illegal contraband." [State Exhibit No. 1 in exhibit envelope.]
[5] In United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the United States Supreme Court noted that the automobile exception to the Fourth Amendment's warrant requirement applies to searches of vehicles that are supported by probable cause to believe that the vehicle contains contraband. In this class of cases, a search is not unreasonable if based on objective facts that would justify the issuance of a warrant, although a warrant has not actually been obtained.
[6] Although defendants filed a motion to quash, urging every conceivable ground, the instant assignment is not expressly grounded on the trial court's failure to grant that motion.