377 So.2d 685 (1979)
STATE of Florida, Appellant,
v.
Earl G. MILLINGTON, Appellee.
No. 56681.
Supreme Court of Florida.
November 21, 1979.
*686 Jim Smith, Atty. Gen., and James S. Purdy, Asst. Atty. Gen., Tampa, for appellant.
Charles F. Clark and Claude H. Tison, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee.
ALDERMAN, Justice.
The State of Florida appeals an order of the County Court of Hillsborough County that holds section 370.15(2)(a), Florida Statutes (1977),[1] unconstitutional, thereby vesting jurisdiction in this Court.
*687 The determinative issue is whether the State of Florida may constitutionally proscribe the possession within its boundaries of "small shrimp" removed from waters outside its boundaries. We reverse and hold that such statutory regulation is not prohibited.
The case arises from the following factual situation. The defendant, Earl Millington, a commercial shrimp fisherman, took from the Gulf of Mexico, at a point outside the boundary of the State of Florida, a quantity of shrimp. The shrimp were subsequently landed at Tampa, Hillsborough County, Florida, and Millington was cited by a Florida Marine Patrol officer for "possession of undersized shrimp" in violation of section 370.15(2)(a). Millington waived his right to be charged by indictment or information and agreed that the prosecution of the charge against him should proceed on the citation. He then moved to dismiss the charge, alleging that section 370.15(2)(a) is unconstitutional because it attempts to extend the state's jurisdiction beyond its boundaries, attempts to regulate natural resources located within the exclusive jurisdiction of the United States, operates to deprive him of his property without due process, denies him the equal protection of the law, and operates to impermissibly burden interstate commerce. The county court granted his motion to dismiss and declared section 370.15(2)(a) "invalid insofar as it attempts to regulate shrimping outside of the territorial limits of Florida and insofar as this defendant is concerned."
The county court, in reaching its decision, focused upon that part of the statute that makes it unlawful for any person, firm, or corporation "to catch, kill, or destroy shrimp or prawn within or without the waters of this state," apparently overlooking the fact that Millington was not charged with any such violation and therefore did not have standing to challenge the constitutionality of this part of the statute. State v. Hill, 372 So.2d 84 (Fla. 1979).[2]
From the charging document, it appears that Millington was charged only with possession of undersized shrimp at Singleton Dock, on the Ybor Channel, in Tampa, Hillsborough County, Florida, in violation of that part of section 370.15(2)(a) that makes it unlawful for any person, firm, or corporation to "have in his possession any small shrimp or prawn taken in such waters." From the words of the statute alone, it is clear that the legislature intended the prohibition against possession of "small shrimp" to apply to shrimp taken both "within or without the waters of this state." This distinguishes the present case from our prior decision in White v. State, 93 Fla. 905, 113 So. 94 (1927), where, after recognizing the fishing industry to be a proper subject for state legislative regulation and protection, and after concluding that taking and possessing fish of a certain kind below a certain size may be prohibited, we concluded that a statutory proscription against possessing undersized mullet did not apply to mullet caught in the waters of another jurisdiction, absent a provision in the statute clearly showing legislative intent to include within the statutory proscription mullet taken in another jurisdiction.
Having determined that the legislature intended to proscribe the possession in Florida of "small shrimp" taken from both "within or without the waters of this state," we reach the determinative issue in *688 this case: May the State of Florida constitutionally proscribe the possession within its boundaries of "small shrimp" removed from waters outside its boundaries? We hold that such statutory regulation is not prohibited and that this part of section 370.15(2)(a) is constitutional.
Over seventy years ago, the United States Supreme Court, in New York ex rel. Silz v. Hesterberg, 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75 (1908), recognized that a state may forbid possession of fish within the state during a closed season, though the effect of such legislation is to prohibit the possession of fish imported from other states. The object of such laws is to protect the local game in the interest of the food supply of the people of the state. The Court held that a New York statute prohibiting the possession of game out of season did not deny due process of law even though the game may have been lawfully taken in a foreign country.
In a more recent case, Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772 (1936), the Supreme Court held that a California statute regulating the manufacture, canning, and packing of sardines within that state did not unlawfully interfere with interstate commerce or deny due process and equal protection of the law. The appellant, Bayside, had been engaged in the business of manufacturing fish flour from sardines caught on the high seas beyond the boundaries of the state. The California law, if applied to Bayside, would have prevented it from manufacturing fish flour. The fish flour was made with the expectation that it would be sold and shipped in interstate commerce. The Supreme Court concluded that if the enforcement of the California law affected interstate or foreign commerce, that result was purely incidental, indirect, and beyond the purposes of the legislation and did not place an impermissible burden on interstate commerce. The Court also found that the California law was well within the police power of the state and did not deprive Bayside of due process and equal protection of the law.
To the extent that section 370.15(2)(a), as it relates to possession of "small shrimp," may affect interstate or foreign commerce, we find that this result is purely incidental, indirect, and beyond the purpose of the legislation and does not invalidate the statute. We also find that the statute has a reasonable purpose, is of uniform application, and does not deny Millington due process or equal protection of the law. The enactment of this law is within the legislature's prerogative in exercising the police power of the state to protect and regulate the production of shrimp in Florida. The following statement by the Supreme Court in Bayside referring to the California statute, is relevant:
[A]nd to the extent that the act deals with the use or treatment of fish brought into the state from the outside, its legal justification rests upon the ground that it operates as a shield against the covert depletion of the local supply, and thus tends to effectuate the policy of the law by rendering evasion of it less easy...
297 U.S. 422 at 426, 56 S.Ct. 513 at 515, 80 L.Ed. 772. See also Kenny v. Kirk, 212 So.2d 296 (Fla. 1968).
Millington also makes a strong argument against the wisdom of section 370.15(2)(a), contending that it is not accomplishing its purpose. This, however, is an argument that must be addressed to the legislature. Absent a violation of due process or other constitutional guarantees, we will not substitute our judgment for that of the legislature's on this issue.
Accordingly, the judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and McDONALD, JJ., concur.
NOTES
[1] Section 370.15(2)(a), Florida Statutes (1977), provides:

(2) Shrimp Catch Regulation; Penalty. 
(a) It is unlawful for any person, firm, or corporation to catch, kill, or destroy shrimp or prawn within or without the waters of this state, or have in his possession any small shrimp or prawn taken in such waters, provided such small shrimp or prawn constitute at least 5 percent of all such shrimp or prawn in such possession. "Small shrimp" or "prawn" are defined as those that require more than 47 with the heads, or 70 without the heads, to make a pound by shrimp count. The words "shrimp count" shall refer to the number of shrimp, heads off, 70 to make a pound or 47 with the heads on to make a pound. This count shall be determined by random sampling in five different locations in the catch, at as widely separated distances and depths as practicable. Each sample shall consist of at least 1 pound of shrimp. The average counts of these five samples shall be the established count for the cargo. In the event shrimp, which when caught, landed, and prior to grading were of legal size under the terms of this subsection, are thereafter graded for size for the purpose of packaging, processing, or other lawful purpose; the smaller shrimp making up the average count of such entire lot as herein provided are graded out into separate lot or lots; and such shrimp so segregated from such entire lot are above the average count as herein provided, the possession, purchase, sale, unloading, transporting, or handling of such particular smaller graded shrimp shall not be unlawful. This provision shall exclude any product which has been processed and imported into the state. "Processed" is defined as frozen, canned, or packaged in up to 10-pound packages. This section shall not apply to live bait shrimp.
[2] In State v. Hill, the defendant had been charged with shrimping in the prohibited Tortugas shrimp nursery area at a point within the territorial waters of the state in violation of section 370.151(2), Florida Statutes (1977). The trial court declared the statute invalid because a portion of restricted area lay outside the boundaries of the state. We reversed, holding that regardless of whether or not the state may prohibit shrimping in waters outside its boundaries, it clearly possesses the authority to proscribe such activities in areas within its boundaries. We concluded that the statute could be legally applied to Hill and that he had no standing to complain that it might not be constitutionally enforceable against one who commits a violation in that portion of the prohibited area lying outside the territorial jurisdiction of the state.