395 So.2d 514 (1981)
STATE of Florida, Appellant,
v.
Carlos M. BENITEZ and Esperanza Benitez, Appellees.
No. 57834.
Supreme Court of Florida.
February 12, 1981.
Rehearing Denied April 13, 1981.
*516 Jim Smith, Atty. Gen., and Calvin L. Fox, Asst. Atty. Gen., Miami, and Janet Reno, State Atty., and Arthur Joel Berger, Asst. State Atty., Miami, for appellant.
Joseph Beeler, and Brian Richard McComb, Miami, for appellees.
Philip Carlton, Jr. of the Law Offices of Philip Carlton, Jr., Miami, for Daniel Cowgill, amicus curiae.
ENGLAND, Justice.
This case comes to us on direct appeal from a trial court order determining that section 893.135, Florida Statutes (1979)  Florida's newly-enacted "drug trafficking" statute  is unconstitutional.
After Carlos and Esperanza Benitez attempted to sell one kilo of cocaine to undercover narcotics agents for $44,000, they were charged by information with "trafficking in cocaine" in violation of section 893.135. In ruling on motions to dismiss the charges, the trial court entered a lengthy order declaring section 893.135 to be facially invalid on a multiplicity of grounds. The state appeals that order, urging error in each of the trial court's rulings.
Section 893.135 is a unique response to a serious and growing concern of the legislature regarding illegal drug activities in the State of Florida. Subsection (1) of the new law establishes severe mandatory minimum *517 sentences for trafficking in various types of illegal drugs. Subsection (2) prevents the trial court from suspending, deferring or withholding the adjudication of guilt or the imposition of sentence on a person convicted under the law, and it eliminates the defendant's eligibility for parole during the minimum mandatory sentence. Subsection (3) provides an "escape valve" from the statute's rigors, based on the initiative of the prosecuting attorney, by permitting the court to reduce or suspend a sentence if a convicted defendant is willing to cooperate with law enforcement authorities in the detection or apprehension of others involved in drug trafficking.
Section 893.135 was enacted to assist law enforcement authorities in the investigation and prosecution of illegal drug trafficking at all levels of distribution, from the importer-organizer down to the "pusher" on the street. The harsh mandatory penalties of subsection (1), ameliorated by the prospect of leniency in subsection (3), were clearly calculated to provide a strong incentive for drug violators to cooperate with law enforcement authorities and become informers. No one argues that the elimination of illegal drug traffic is not a beneficial and worthwhile goal, or that the goals of this legislation are not meritorious.
Nonetheless, in their zeal to combat the flow and distribution of illegal drugs through this novel legislation, legislators knowingly glossed over alleged constitutional defects in the approach that was being developed. We in the judiciary do not have that luxury. Indeed, the trial judge's extensive and detailed order exhibits the multiple, serious difficulties which this statute poses under well-established constitutional principles. We discern six major challenges to the constitutionality of section 893.135, one directed at the mandatory penalties and five directed at the escape valve in subsection (3). The state also half-heartedly challenges the appellees' standing for the first time on this appeal. This last challenge being the easiest to treat, we discuss it first.

1. Standing

The basic rule governing the standing of parties challenging statutory enactments was recently stated in Sandstrom v. Leader, 370 So.2d 3, 4 (Fla. 1979):
Fundamental constitutional principles dictate that one may not challenge those portions of an enactment which do not adversely affect his personal or property rights... Such a personal stake in the outcome of the controversy is necessary "to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" (citations omitted).
The state argues that, because appellees have not yet been convicted, they have no personal stake in this penalty-oriented statute.
To state the assertion is to demonstrate its absurdity. A party subject to criminal prosecution clearly has a sufficient personal stake in the penalty which the offense carries. This is wholly unlike cases in which criminal defendants have challenged portions of a statute which have nothing to do with their prosecution. See State v. Millington, 377 So.2d 685 (Fla. 1979); State v. Champe, 373 So.2d 874 (Fla. 1978).

2. Cruel and Unusual Punishment

Appellees argue that the mandatory minimum sentences of section 893.135(1) violate the cruel and unusual punishment clauses of the state[1] and federal[2] constitutions. Relying on various death penalty decisions of the United States Supreme Court,[3] they first contend that the mandatory minimum sentences unconstitutionally eliminate the exercise of discretion in sentencing. This argument was rejected by *518 this Court in McArthur v. State, 351 So.2d 972 (Fla. 1977), and warrants no further discussion here.
Appellees also argue that the mandatory sentences in section 893.135 constitute cruel and unusual punishment since they are unnecessarily severe and disproportional to the nature of the crime. This Court has consistently upheld minimum mandatory sentences, regardless of their severity, against constitutional attacks arguing cruel and unusual punishment. See, e.g., McArthur v. State, 351 So.2d 972 (Fla. 1977); Banks v. State, 342 So.2d 469 (Fla. 1976); O'Donnell v. State, 326 So.2d 4 (Fla. 1975). The dominant theme which runs through these decisions is that the legislature, and not the judiciary, determines maximum and minimum penalties for violations of the law. While it is often said that in an extreme case  wherein the sentence was grossly disproportionate to the severity of the crime  the legislature's judgment would run afoul of the constitutional prohibition, this Court has never addressed such a situation in the context of statutory sentencing minima.
The recent decision of the United States Supreme Court in Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), indicates that similar considerations prevail under the federal constitution. In that case, the Court held that a mandatory life sentence imposed on the petitioner pursuant to a Texas recidivist statute did not constitute cruel and unusual punishment under the eighth amendment. The majority's analysis of this area noted that:
[t]his Court has on occasion stated that the Eighth Amendment prohibits imposition of a sentence which is grossly disproportionate to the severity of the crime... . In recent years this proposition has appeared most frequently in opinions dealing with the death penalty... . Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishment to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel.
Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.
Id., 445 U.S. at 271, 100 S.Ct. at 1138 (citations omitted). After analyzing one of these rare successful challenges, Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the majority concluded:
Given the unique nature of the punishments considered in Weems and in the death-penalty cases, one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.
Id., 445 U.S. at 273, 100 S.Ct. at 1139 (footnote omitted).
The penalties imposed by section 893.135 are certainly severe, but they are by no means cruel and unusual in light of their potential deterrent value and the seriousness of the crime involved. See McArthur v. State; O'Donnell v. State; accord, People v. Broadie, 37 N.Y.2d 100, 371 N.Y.S.2d 471, 332 N.E.2d 338, cert. denied, 423 U.S. 950, 96 S.Ct. 372, 46 L.Ed.2d 287 (1975).

3. Due Process-Vagueness

Little discussion is needed concerning appellees' suggestion that subsection (3) is impermissibly vague in defining a convicted defendant who is eligible for lenient treatment as "any person ... who provides substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, co-conspirators, or principals." Being a description of a post-conviction form of plea bargaining rather than a definition of the crime itself, the phrase "substantial assistance" can tolerate subjectivity to an extent which normally would be impermissible for penal statutes. Cf. Linville v. State, 359 So.2d 450 (Fla. 1978) (statutory definition of proscribed activity *519 held unconstitutionally vague). The contested phrase, in any event, is susceptible of common understanding in the context of the whole statute. Schultz v. State, 361 So.2d 416 (Fla. 1978). There is no due process infirmity.

4. Equal Protection

Appellees' suggestion that subsection (3) denies equal protection of the law to convicted defendants who cannot provide "substantial assistance" to law enforcement officials is patently without merit. This legislation manifestly passes the rational basis test. See Hamilton v. State, 366 So.2d 8 (Fla. 1978).

5. Separation of Powers

Two basic arguments by appellees are directed at Florida's constitutional separation of governmental powers. Art. II, § 3, Fla. Const. First, they assert that subsection (3) encroaches on the Court's rulemaking role, Art. V, § 2(a), Fla. Const., in that it conflicts with Rule 3.800(b), Rule 3.720(b), and Rule 3.171 of the Florida Rules of Criminal Procedure. The statute differs from these rules, of course, but it in no way so conflicts with them as to offend the constitution.
Rule 3.800(b) permits the reduction of legal sentences, yet since it specifically excludes minimum mandatory sentences from its operation, its procedures obviously are not incompatible with section 893.135. Likewise, Rules 3.720(b) and 3.171 do not pose any obstacle to the operation of section 893.135. Rule 3.720(b) provides that at a sentencing hearing, the court shall "[e]ntertain submissions and evidence by the parties which are relevant to the sentence... ." Subsection (3) states that "[t]he arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any [motion for reduction or suspension of sentence]." The statute does not explicitly exclude the defendant from submitting evidence in his behalf, and it does not offend the statutory scheme to afford him that right. Finally, applicable procedural safeguards in Rule 3.171 can be afforded to defendants, to the extent they do not conflict with the explicit language of subsection (3). No infirmity of constitutional dimension attends the omission of those that do.
Appellees' second argument premised on the constitutional separation of powers is that subsection (3) usurps the sentencing function from the judiciary and assigns it to the executive branch, since the benefits of subsection (3) are triggered by the initiative of the state attorney. Under the statute, the ultimate decision on sentencing resides with the judge who must rule on the motion for reduction or suspension of sentence. "So long as a statute does not wrest from courts the final discretion to impose sentence, it does not infringe upon the constitutional division of responsibilities." People v. Eason, 40 N.Y.2d 297, 301, 386 N.Y.S.2d 673, 676, 353 N.E.2d 587, 589 (1976) (emphasis in original) (rejecting a separation of powers attack on a similar provision in New York's drug laws).

6. Self-incrimination

Finally, the appellees argue that section 893.135 coerces a defendant into relinquishing his fifth amendment privilege against self-incrimination by denying him sentencing leniency unless he cooperates with the authorities. We reject this argument, primarily because it depends on unwarranted assumptions about the nature of the informer's disclosures. Nothing in the statute suggests that "substantial assistance" must incriminate the defendant of crimes other than those for which he has already been convicted (and for which no fifth amendment privilege is obviously necessary). We acknowledge the risk of prosecution in other jurisdictions. Nonetheless, a defendant need not invoke subsection (3), as nothing in the statute is compulsive. Putting a defendant to a difficult choice is not necessarily forbidden by the fifth amendment. See, e.g., Corbitt v. New Jersey, 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978) ("[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a *520 right, is invalid." (footnote omitted)); Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). No constitutional deprivation results if a defendant elects to reap the benefits of subsection (3).
With respect to those cases which say that the trial courts may not enhance a sentence based on a defendant's failure to cooperate with the authorities, see United States v. Garcia, 544 F.2d 681 (3rd Cir.1976); United States v. Acosta, 501 F.2d 1330 (5th Cir.1974) (Gee, J., dissenting), adopted en banc, 509 F.2d 539 (5th Cir.), cert. denied, 423 U.S. 891, 96 S.Ct. 188, 46 L.Ed.2d 122 (1975); United States v. Rogers, 504 F.2d 1079 (5th Cir.1974), cert. denied, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975), we believe that Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), went a long way toward resolving this issue against appellees. The Court in Roberts concluded that the district court properly considered the defendant's refusal to cooperate as one factor in imposing consecutive sentences. Admittedly, a fifth amendment claim was not properly raised in Roberts and "would have merited serious consideration" if it had been. Id. at 559, 100 S.Ct. at 1364. We conclude, however, that for fifth amendment purposes the situation in Roberts is distinguishable from that here. A sentence reduction obtained by a sentenced convict due to his cooperation is not tantamount to the enhancement of a sentence imposed on an unsentenced, but convicted defendant as a result of his lack of cooperation. The former is no different from a gratuitous sentence reduction offered to one already incarcerated who, even without statutory sanction, risks reincrimination in exchange for early release benefits.
Our disposition of appellees' challenges obviates the need to consider the severability of subsection (3) from the statute. We hold that section 893.135 is constitutional. The order of the trial court is reversed, and the case is remanded for further proceedings.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Art. 1, § 17, Fla. Const.
[2] U.S.Const. amend. VIII.
[3] Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).