515 So.2d 283 (1987)
STATE of Florida, Appellant,
v.
Eugene RAFFIELD, et al., Appellees.
No. BP-439.
District Court of Appeal of Florida, First District.
October 20, 1987.
Rehearing Denied December 7, 1987.
*284 Robert A. Butterworth, Atty. Gen., John W. Tiedemann and Bradford L. Thomas, Asst. Attys. Gen., and Charles R. McCoy, Asst. Gen. Counsel, Dept. of Natural Resources, Tallahassee, for appellant.
Kenneth G. Oertel, Oertel and Hoffman, Tallahassee, for appellees.
ERVIN, Judge.
The State of Florida appeals a county court's order dismissing misdemeanor charges against Eugene Raffield, et al., on the grounds that the statute on which the charges were based, Section 370.08(3), Florida Statutes (1985), violates the due process provisions of the Florida and United States Constitutions and the commerce clause of the United States Constitution. We reverse, finding no constitutional infirmities.
Section 370.08(3) forbids the taking of "food fish within or without the waters of this state with [the use of] a purse seine, purse gill net, or other net using rings or other devices on the lead line thereof, through which a purse line is drawn... ." Section 370.08(3) also prohibits the possession of food fish so taken for sale or shipment. Violation of the statute is a misdemeanor.
The National Marine Fisheries Service on June 30, 1986 issued an emergency rule pursuant to the authority provided in Section 305(e)(1) of the Magnuson Fishery Conservation and Management Act (16 U.S.C.A. § 1855(e)(1)), limiting the total harvest of red fish in the federal conservation zone to one million pounds during the 90-day period between June 25, 1986 and September 23, 1986. 51 Fed.Reg. 23,511 (1986) (to be codified at 50 C.F.R. § 653). The emergency rule established permitting requirements and required all fishing vessels to have on board federal observers.
Appellee, Eugene Raffield, the owner of a fish processing plant in Gulf County, Florida, received a federal permit pursuant to the emergency rule to catch red fish. On July 1, 1986, the United States Fish and Wildlife Service notified the Florida Department of Natural Resources that possible violations of section 370.08(3) had occurred, due to the taking of red fish by purse seine in a Florida registered vessel in federal waters off the coast of Louisiana. The fish were landed in Louisiana and then trucked to Port St. Joe, Florida, where appellee, Eugene Raffield, and several personnel who assisted in the trucking and processing of the fish were arrested at the site of the Raffield fish processing plant. Citations were issued, charging Eugene Raffield and Raffield Fisheries, Inc., with violating section 370.08(3), for possessing food fish (red drum) that were taken by illegal means (purse seine). Appellee filed a motion to dismiss the charges, arguing alternatively that section 370.08(3) had been preempted by federal law, is unconstitutional, and that its enforcement was carried out in an arbitrary, capricious and selective manner. A county court judge issued an order granting Raffield's motion to dismiss, finding the statute to be an unconstitutional violation of the due process provisions of the Florida and United States Constitutions, and a violation of the commerce clause of the United States Constitution.

I.
We first observe that the adoption of the Magnuson Fishery Conservation and Management Act by Congress did not preempt the right of the State of Florida to regulate commercial fishing outside the territorial limits of this state. See Livings v. Davis, 465 So.2d 507 (Fla. 1985) (the adoption of the Magnuson Act does not preempt the State of Florida from regulating *285 state-registered vessels in the state's extraterritorial waters in the absence of a conflicting regulation implementing a federal plan managing the same fishery). Accord Potter v. McCullers, 505 So.2d 510 (Fla. 3d DCA 1987). In Livings, fishermen were arrested for violating a state statute prohibiting the taking or possession of small shrimp on March 31, April 13 and May 2, 1981, prior to the effective date of a federal management plan that was adopted for the shrimp fishery on May 20, 1981. The Florida Supreme Court ruled that before the adoption of the federal management plan, the Magnuson Act did not preempt state extraterritorial fishing regulations.
The instant case is similar to Livings. Appellees at bar were arrested for possession of red fish taken by purse seine on July 16, 1986, in the state of Florida. At the time of appellees' arrest, the emergency interim rule then in effect, regarding the red fish harvest, specifically stated that it "does not supersede any state landing laws which apply to red drum." 51 Fed. Reg. 23,551, 23,553 (e.s.). The emergency interim rule went into effect June 25, 1986, and was the operative regulation when the charged offenses occurred. At that point in time,[1] there was no preemption of state regulation affecting the landing of red fish.

II.
We find also that the trial court erred in holding that section 370.08(3) violates the federal commerce clause in that we are unable to perceive that the statute's provisions involve any undue burden on interstate commerce. In State v. Millington, 377 So.2d 685, 688 (Fla. 1979), the Florida Supreme Court held that a statute banning the importation of undersized shrimp taken from outside the territorial limits of Florida was not an unconstitutional burden on interstate commerce, stating: "[T]o the extent that [the statute,] as it relates to possession of `small shrimp'[,] may affect interstate or foreign commerce, we find that this result is purely incidental, indirect, and beyond the purpose of the legislation and does not invalidate the statute." Millington relied on Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772 (1936), which upheld a law banning the transportation of sardines from the high seas into the State of California for the manufacture of fish flour. The fish flour was made with the expectation that it would be sold and shipped in interstate commerce.
In our judgment the statute at issue is similar to the statutes challenged in State v. Millington and Bayside Fish Flour Co. v. Gentry, and any burden placed on interstate commerce by its operation is incidental to the primary, valid purpose of protecting the state's supply of food fish. See also National Fishermen Producers Cooperative Society, Ltd. of Belize City v. State, 503 So.2d 430 (Fla. 3d DCA 1987) (Florida regulations regarding possession of lobster tail, even when in interstate transit, are not such a burden on interstate commerce as to violate the commerce clause). In National Fisherman, the State of Florida was found to have a valid purpose in confiscating crawfish moving through the state in interstate commerce, even though the seafood was not destined to be marketed in Florida and the owner of the seafood was a foreign entity.

III.
The county court judge concluded also that the statute was void for vagueness and violated the due process provisions of the United States and Florida constitutions, due to varying interpretations of the statute by officials from the Florida Marine Patrol. We disagree. If the statutory language is sufficiently clear, the fact that officials place different interpretations on the statute does not make the statute void for vagueness. "Small variances in the *286 understanding of individual officers which could possibly be clarified on closer reading of the statute do not necessarily show vagueness." Gardner v. Johnson, 451 So.2d 477, 478-79 (Fla. 1984). "A statute must be definite enough to apprise a person of common intelligence of the activity sought to be proscribed." Id. Section 370.08(3) plainly states that "no person may take food fish within or without the waters of the state with a purse seine ..., or have any food fish so taken by purse seine in his possession for sale or shipment." In the case at bar the red fish were taken from federal waters off the coast of Louisiana and trucked to Florida. The statute bars the possession in Florida of such fish that were illegally taken by purse seine elsewhere. The conduct which is proscribed by the statute is clear and the statute is not unconstitutionally void for vagueness.

IV.
The county court judge also stated that there were equal protection problems with the statute, since, apparently, it was his belief that there was selective enforcement of the statute against Florida citizens and not others. We disagree. A statute which regulates the conduct of the citizens of Florida, either within or without the territorial limits of the state, does not violate equal protection. See Skiriotes v. Florida, 313 U.S. 69, 77, 61 S.Ct. 924, 929, 85 L.Ed. 1193, 1200 (1941). In Skiriotes, the Supreme Court held that a state may constitutionally govern the conduct of its citizens upon the high seas with respect to matters for which the state has a legitimate interest, provided there is no conflict with acts of Congress. Skiriotes objected to enforcement of the state's prohibition on sponge diving in an area which he alleged was outside the jurisdictional limits of the State of Florida. Similarly to the result reached by the Supreme Court, we find no violation of the equal protection clause by the statute in question, as it regulates the taking of food fish by Florida citizens outside the territorial waters of the state in order to enforce a matter for which the state has a legitimate interest  the conservation of the fishery resource.
We therefore reverse the order of the county court granting appellee's motion to dismiss and declaring section 370.08(3) unconstitutional.
REVERSED and REMANDED for consistent proceedings.
SMITH, C.J., and BOOTH, J., concur.
NOTES
[1] The Commerce Department subsequently published a fishery management plan for the red drum fishery, effective December 24, 1986, which preempts state regulation of the red drum fishery. 51 Fed.Reg. 46,675 (1986) (to be codified at 50 CFR § 653). The final rule implementing the fishery management plan for the red drum fishery became effective October 16, 1987. 52 Fed.Reg. 34,918 (1987) (to be codified at 50 CFR § 653).