565 So.2d 704 (1990)
Eugene RAFFIELD, et al., Petitioners,
v.
STATE of Florida, Respondents.
No. 71677.
Supreme Court of Florida.
July 19, 1990.
Kenneth G. Oertel and Segundo J. Fernandez of Oertel, Hoffman, Fernandez & Cole, P.A., Tallahassee, for petitioners.
*705 Robert A. Butterworth, Atty. Gen., Bradford L. Thomas, Asst. Atty. Gen., Tallahassee, and Tom Gardner, Executive Director, Dept. of Natural Resources, and Charles R. McCoy, Asst. Gen. Counsel, Tallahassee, for respondents.
Karen Hope Yore, Gen. Counsel, Tallahassee, amicus curiae for Southeastern Fisheries Ass'n, Inc.
KOGAN, Justice.
We have for review State v. Raffield, 515 So.2d 283 (Fla. 1st DCA 1987), which expressly declared valid subsection 370.08(3), Florida Statutes (1985). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Eugene Raffield, owner of a fish processing plant in Gulf County, Florida, received a federal permit to catch red fish in federal waters in the Gulf of Mexico. On July 1, 1986, the United States Fish and Wildlife Service notified the Florida Department of Natural Resources that Raffield may have violated Florida law by harvesting red fish using a purse seine. The fish were caught off the coast of Louisiana, landed at Venice, Louisiana, and taken to Port St. Joe, Florida. Subsequently, Raffield and several others were arrested in Florida for possessing fish caught in violation of section 370.08(3), Florida Statutes.
The statute provides in pertinent part: "No person may take food fish within or without the waters of this state with a purse seine... . or have any food fish so taken in his possession for sale or shipment." § 370.08(3), Fla. Stat. (1985).
Raffield filed a motion to dismiss the charges on grounds that the statute had been preempted by federal law, was unconstitutional and had been enforced in an arbitrary and capricious manner. The trial court granted the motion, but later was reversed by the First District. Raffield, 515 So.2d at 284.
On the question of preemption, we cannot agree with Raffield's argument that federal regulations affecting the red drum fishery have preempted Florida law. By their own terms, the rules do the opposite. The rules' preamble states:
The Secretary recognizes the conservation and management efforts of the coastal states in the Gulf of Mexico with regard to the red drum fishery. The Secretary desires to support those efforts through ths [sic] emergency action to the maximum extent permitted under the Magnuson [Fishery Conservation and Management] Act.[[1]] It is the intent of the Secretary to supplement the States' efforts to conserve red drum. Therefore, the emergency rule does not supersede any State landing laws which apply to red drum. For purposes of the emergency rule, a State landing law is a statute, regulation or ordinance which makes it unlawful to land or possess within the jurisdiction of a State any red drum.
51 Fed.Reg. 23,553 (1986) (emphasis added). Implementing this statement of intent the actual rules provide:
(a) Persons affected by these regulations should be aware that other Federal and State statutes and regulations may apply to their activities.
... .
(d) These regulations will not be construed to supersede any State law which prohibits the landing or possession within the jurisdiction of that State of any red drum.

Id. at 23,554 (emphasis added).
The statute at issue today manifestly is a "State law which prohibits the landing or possession" of red drum caught with a purse seine. Thus, we find no preemption. If anything, the federal government has actively encouraged the efforts of the state to reduce the burden on the red drum fishery caused by the sudden popularity of "blackened redfish" and the resulting insatiable demand for commercial red drum. And as we stated in Livings v. Davis, 465 So.2d 507, 509 (Fla. 1985),
the [Magnuson Act] makes no attempt to preempt the field, but in fact recognizes continued state jurisdiction over vessels *706 registered under the laws of the various states.
Here, Florida's jurisdiction over Raffield and the red drum he caught in federal waters off Louisiana is plainly authorized by the federal officer charged with administering the Magnuson Act. 51 Fed.Reg. at 23,553-54. The interpretation of administrative officers with special expertise, who are charged to administer a law, are entitled to judicial deference and will be given great weight in the courts of Florida. United States Gypsum Co. v. Green, 110 So.2d 409 (Fla. 1959). Accordingly, we conclude that no preemption has occurred in this instance.
Our opinion in Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984), does not dictate a different result. In Southeastern Fisheries we dealt exclusively with the issue of whether a law could be enforced outside the territorial limits of Florida in the absence of an express provision to that effect by the legislature. Here, the law is not being applied beyond the territorial limits of the state. Raffield is charged with illegal possession of certain red drum within Florida. Moreover, even if this statute could be construed as applying beyond the state's territorial limits, the legislature has expressly provided that the statute applies to fish taken "without the waters of this state with a purse seine." § 370.08(3), Fla. Stat. (1985). Accordingly, Southeastern Fisheries is readily distinguishable from the present case.
Next, Raffield contends that the statute violates due process and equal protection because it allegedly is vague and susceptible of more than one interpretation, and is enforced capriciously. However, we find insufficient evidence in the record to support these allegations within the facts of this case. Moreover, we agree with the district court's observation that the statute is sufficiently definite to apprise persons of common intelligence of the activities that are prohibited. Raffield, 515 So.2d at 286 (citing Gardner v. Johnson, 451 So.2d 477, 478-79 (Fla. 1984)). We also agree that Florida legitimately may regulate the conduct of its own citizens and residents without violating equal protection, even though similar regulations might not exist in other states. Id. (citing Skiriotes v. Florida, 313 U.S. 69, 77, 61 S.Ct. 924, 929, 85 L.Ed. 1193 (1941)).
Finally, Raffield argues that this statute violates the commerce clause. Art. I, § 8, cl. 3, U.S. Const. Initially, we will assume for the sake of argument that the statute at issue today is subject to a more demanding judicial scrutiny because it affirmatively impedes interstate commerce in red drum caught in a certain manner. See Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986). Thus,
the burden falls on the State to demonstrate both that the statute "serves a legitimate local purpose," and that this purpose could not be served as well by available nondiscriminatory means.
Id. (citing Hughes v. Oklahoma, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979)).
There is no doubt that the state has satisfied its burden as to the first prong of this test. Florida clearly has an interest in protecting fisheries that are a vital source of food for its residents, even though the fisheries lie beyond the territorial limits of the state. Skiriotes v. State, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941); Livings v. Davis, 465 So.2d 507 (Fla. 1985); State v. Millington, 377 So.2d 685 (Fla. 1979).
We also conclude that the state has met its burden as to the second prong of the test. In this instance, the manifest intent underlying the statute is to protect food fish, including red drum, from the use of purse seines. This record discloses that purse seines are an extremely efficient method of fishing  in fact, so efficient that they have threatened to wipe out some species of commercial food fish. This statute is directed at this evil in the only possible way: It eliminates Florida as a market for food fish obtained by using purse seines. We can conceive of no other "available nondiscriminatory means" that would achieve the state's purpose in this instance.
*707 The fact that other states have not adopted similar legislation is not relevant to our inquiry today. Florida's extensive coastline historically has given it a special stake in fishing activities in the Gulf of Mexico and Atlantic Ocean. Fishing is a vitally important industry in this state's economy. Simultaneously, we must recognize that Florida is one of the most populous states in this region, thus resulting in special burdens on the food-fish industry. Because of Florida's unique position, the legislature legitimately has concluded that special conservation measures must be implemented to preserve the food-fish industry. Eliminating Florida as potential market for food fish harvested by purse seines is such a conservation measure.
We also must note that the statute at issue today does not prohibit the importation of food fish, including red drum, obtained from other means. Although this is obvious on the face of the statute, the point needs belaboring. Under current Florida law, red drum still may be sold in Florida, provided it has been harvested by lawful means other than the use of a purse seine. The only burden this statute places on interstate commerce is to require fishing concerns to harvest fish by means consistent with sound conservation, as determined by the Florida legislature. Moreover, the statute applies to resident and nonresident alike and confers no special benefit on Florida or out-of-state residents.
We thus conclude that, even under the most rigorous scrutiny conceivably applicable here, the statute does not violate the commerce clause. See Maine, 477 U.S. at 138, 106 S.Ct. at 2447. The result reached by the district court is approved.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT and GRIMES, JJ., concur.
NOTES
[1] See 16 U.S.C. § 1855(e)(1) (1988).