THE STATE OF OHIO, APPELLEE, *v.* PORT CLINTON FISH COMPANY, APPELLANT.

[Cite as State *v.* Port Clinton Fish Co. (1989), 43 Ohio St. 3d 93.]

(No. 88-258—Submitted March 8, 1989—Decided May 24, 1989.)

*Mark S. Schmollinger,* assistant prosecuting attorney, *Anthony J. Celebrezze, Jr.,* attorney general, and *John McManus,* for appellee.

*Connelly, Soutar & Jackson, Reginald S. Jackson, Jr.,* and *Steven R. Smith,* for appellant.

HOFFMAN, J.

I

As amended in 1984, R.C. 1533.63

prohibits commercial fishing of walleye within the boundaries of the state of Ohio, and furthermore states that "walleye * * * originating from outside of this state may be possessed for sale, bought, or sold subject to the orders of the division of wildlife." Prior to its amendment in 1984, R.C. 1533.63 explicitly regulated undersized walleye along with other fish such as yellow perch, catfish, etc. Now the same "undersize" restrictions pertaining to walleye that were in R.C. 1533.63 are codified in Ohio Adm. Code 1501:31-3-02, legal length and weight of certain fish.

That regulation provides in pertinent part:

"Under authority of section 1533.63 of the Revised Code and division (D) of section 1531.08 of the Revised Code, the chief of the division of wildlife hereby orders that throughout the state:

"(A) It shall be unlawful for any person to sell, buy, transport, take, catch, or possess * * * a walleye * * * less than fifteen and one-half inches in length, *a walleye fillet or part fillet of a length less than nine and one-half inches * * *.*

"* * *

"(E) It shall be unlawful for any person to take, possess, sell, buy, transport, or cause to be transported, a quantity, container, boat load, catch or haul of any species of fish referred to in this rule containing *more than ten per cent by weight of undersized round, filleted or headless fish.*" (Emphasis added.)

The issue herein is whether the subject regulations, which criminalize the possession of undersize walleye, are violative of the Commerce Clause of the United States Constitution. Because R.C. 1533.63 now prohibits commercial fishing of walleye in Ohio waters, all such fish traded commer-

cially in the state must of necessity be caught outside Ohio.

The test we employ has been circumscribed by the United States Supreme Court as follows:

"* * * (1) whether the challenged statute regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose; and, if so, (3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce." *Hughes v. Oklahoma* (1979), 441 U.S. 322, 336.

The elements of the above test must be met in the conjunctive if the regulations being examined are to be upheld.

Turning to the first prong of the *Hughes* test, we find the challenged regulations are "evenhanded" in that they neither favor local enterprise nor facially discriminate against interstate commerce. In reviewing precisely the same regulations as are presently before us, the United States District Court noted:

"The statute and regulations in issue here cannot be interpreted as favoring local enterprise and intentionally discriminating against interstate commerce. Indeed, those most adversely affected are members of the local commercial fish industry. No Ohio industry is placed in a better position by the fishing restrictions than any similar out-of-state commercial fisherman. Commercial fishing of walleye has been banned to all. If anything, the restrictions act as a boon to out-of-state fishermen who may market their walleye in Ohio without local competition." *Hosko v. Teater* (Jan. 29, 1985), N.D. Ohio No. C80-542, unreported, at 9. (Magistrate's report and recommen-

dation adopted by order of court dated March 25, 1985.)

The instant regulations meet the first element of the *Hughes* test.

We need not dwell on the second element of the *Hughes* test. Obviously, the purpose of the statute and regulations is protection and conservation of wildlife, a legitimate state interest. Appellant's contention that "these regulations * * * have the effect of erecting a trade barrier" is without merit.

The third element of the *Hughes* test considers whether alternative means could promote the "local purpose" as well without infringing in any manner upon interstate commerce. Port Clinton maintains that since amended R.C. 1533.63 forbids commercial fishing of walleye in Ohio, it is superfluous to burden Ohio's fish distributors with length-limit regulations. Appellant further contends that the record-keeping provisions of R.C. 1533.63 (sales, purchases, and labeling) serve the identical purpose of Ohio Adm. Code 1501:31-3-02 and together with the ban render said regulations unnecessary.

With the primary purpose of the length limitations being the protection of immature walleye, we see no better, *i.e.*, less intrusive, means for the propagation of the species than the instant regulatory mechanism. Requiring that Ohio fish distributors observe a regulation clearly designed to ensure a plentiful walleye population in the future (and allowing these parties a ten-percent "margin of error") is a feasible and practical way of accomplishing the intended goal. Additionally, the intrusion upon the affected parties (Ohio fish distributors) and the flow of commerce is *de minimis*.

Applying the *Hughes* standard, the instant regulations do not contravene the Commerce Clause of the United States Constitution. See *State* v. *Millington* (Fla. 1979), 377 So. 2d 685, where in an identical situation (defendant in violation of possessing undersize shrimp) the Florida Supreme Court ruled the pertinent state statute not unconstitutional on Commerce Clause grounds.

## II

Finally, appellant argues in the alternative that the instant regulations disrupt its "right to contract." Appellant provides no persuasive authority to support its position. Simply put, appellant is permitted to contract for the purchase and sale of legal-size walleye with any party it desires.

We conclude by holding that with a legitimate state purpose for the protection and propagation of walleye in the state of Ohio as its basis, and only minimal intrusion on the affected parties, Ohio Adm. Code 1501:31-3-02 does not violate the Commerce Clause of the United States Constitution or interfere with freedom to contract.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

JOHN R. HOFFMAN, J., of the Fifth Appellate District, sitting for RESNICK, J.

HOLMES, J., concurring. In wholeheartedly concurring I believe it to be important to point out in support of the legitimate state purpose of such regulations some additional factors. The propagation and management of walleye for the recreational taking of this fish in the waters of Lake Erie has proven to be a great asset to the state

of Ohio, not only to the angler, but also to those serving the needs of this great outdoor sport—such as boat and motor sales and servicing, tackle dealers, marinas, restaurants, charters, and many others.

The availability of the greatest number of walleye for sport fishing depends not only upon the manner of the control and management of the species in the American portion of the waters of Lake Erie, but also upon the control and protection of walleye in Canadian waters. The mobility of walleye from one side of Lake Erie to another, crossing the international boundary, is a well-known fact of aquatic biology. It follows that the amounts and size of fish taken in the Canadian portion of Lake Erie directly affect the number of the species available for Ohio sportsmen.

Obviously, Ohio authorities may not mandate the reasonably necessary wildlife management provisions to be applied in Canadian waters. The next best approach then is, as was done here, to apply regulations to the species which are brought into Ohio.

The majority's position can simply be supported here to show that there is a real and legitimate purpose in promulgating the Department of Natural Resources' regulations for the protection and propagation of walleye.