87 F.3d 827
 Frank REYNOLDS, d/b/a Reynolds Fisheries; Port Clinton Fish
Company; James Maricque, Plaintiffs-Appellants,
v.
Frances S. BUCHHOLZER, Director of Ohio Department of
Natural Resources; Richard B. Pierce, Chief of the Division
of Wildlife; George B. Voinovich, Governor of the State of
Ohio, Defendants-Appellees.
 No. 94-4294.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 29, 1996.
Decided July 1, 1996.
 
 Charles E. Bloom (argued and briefed), Herschel, Accettola, Bloom & Associates, Toledo, OH, Jeffrey C. Zilba (briefed), Zilba & Korpowski, Toledo, OH, for Frank Reynolds, Port Clinton Fish Co., and James Maricque.
 Joan C. Weiser (argued and briefed), Attorney General's Office, Columbus, OH, for Frances S. Buchholzer, Richard B. Pierce, and George B. Voinovich.
 Before: KEITH and SILER, Circuit Judges; GIBBONS, Chief District Judge.*
 SILER, Circuit Judge.
 
 
 1
 Frank Reynolds, a commercial fisherman, Port Clinton Fish Company, a fish distributor, and James Maricque, a Wisconsin restaurateur [collectively "the plaintiffs"], appeal the district court's dismissal of their cause of action. The plaintiffs filed a claim for declaratory and injunctive relief against the Ohio Department of Natural Resources ["ODNR"]. They argue that the Ohio statutes and regulations ["the statutes"][1] that limit or preclude the commercial fishing of walleye and yellow perch are unconstitutional because they violate the Commerce Clause of the United States Constitution. The district court granted ODNR's motion for dismissal. For the reasons stated herein, we affirm the district court.
 
 
 2
 The Commerce Clause confers upon Congress the power "to regulate Commerce ... among the several States." U.S. Const. art. I., § 8, cl. 3. Among other things, this clause limits the power of individual states to interfere with interstate commerce even if the legislation involves matters of legitimate local concern. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 471, 101 S.Ct. 715, 727-28, 66 L.Ed.2d 659 (1981); see also Oregon Waste Sys., Inc. v. Department of Envtl. Quality of State of Or., 511 U.S. 93, ----, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994) ("[The Commerce Clause] denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."). State fish and wildlife laws are within the reach of the Commerce Clause; they cannot unjustifiably interfere with interstate commerce. Hughes v. Oklahoma, 441 U.S. 322, 335-36, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979); see also Clover Leaf, 449 U.S. at 471, 101 S.Ct. at 727-28 (noting that the Commerce Clause limits environmental protection and resource conservation laws).
 
 
 3
 The Supreme Court has constructed a two-part framework to determine if "resource conservation laws" or "environmental protection laws" impermissibly interfere with interstate commerce. First, when a "state law purporting to promote environmental purposes is in reality 'simple economic protectionism,' [the courts] have applied a 'virtually per se rule of invalidity.' " Clover Leaf, 449 U.S. at 471, 101 S.Ct. at 727 (quoting Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978)). Otherwise, the courts are to employ a balancing test:
 
 
 4
 Even if a statute regulates "evenhandedly," and imposes only "incidental" burdens on interstate commerce, the courts must nevertheless strike it down if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Moreover, "the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."
 
 
 5
 Clover Leaf, 449 U.S. at 471, 101 S.Ct. at 727-28 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)); see Oregon Waste, 511 U.S. at ----, 114 S.Ct. at 1350 (affirming standard); Hughes, 441 U.S. at 336, 99 S.Ct. at 1736 (same); Philadelphia, 437 U.S. at 624, 98 S.Ct. at 2535 (same).
 
 
 6
 Thus, this court must first determine if the statute in question constitutes "simple economic protectionism." Economic protectionism can be proved by showing discriminatory effect or discriminatory purpose. Clover Leaf, 449 U.S. at 471 n. 15, 101 S.Ct. at 727 n. 15. As used in the Commerce Clause context, " 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste, 511 U.S. at ----, 114 S.Ct. at 1350; see, e.g., id. ("It is well-established ... that a law is discriminatory if it 'tax[es] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.' ") (quotations omitted); City of Philadelphia, 437 U.S. at 627, 98 S.Ct. at 2537 ("[A] State may not accord its own inhabitants a preferred right of access over consumers in other States to natural resources located within its borders."); Douglas v. Seacoast Prods., Inc., 431 U.S. 265, 285-86, 97 S.Ct. 1740, 1752-53, 52 L.Ed.2d 304 (1977) (criticizing discriminatory fishing regulations); New York State Trawlers Ass'n v. Jorling, 16 F.3d 1303, 1307 (2d Cir.1994) ("Provided a state does not discriminate against non-residents, however, it may impose incidental burdens on interstate commerce when exercising its police power to promote safety or general welfare.").
 
 
 7
 In the instant case, the statute does not distinguish in-state fishermen from out-of-state fisherman. As the district court stated,
 
 
 8
 The statute and regulations in issue here cannot be interpreted as favoring local enterprise and intentionally discriminating against interstate commerce. Indeed, those most adversely affected are members of the local commercial fish industry. No Ohio industry is placed in a better position by the fishing restrictions than any similar out-of-state commercial fisherman. Commercial fishing of walleye has been banned to all. If anything, the restrictions act as a boon to out-of-state fisherman who may market their walleye in Ohio without local competition.
 
 
 9
 Hosko v. Teater, No. C80-542 (N.D.Ohio Mar. 25, 1985) (adopting Magistrate Judge's report and recommendation), quoted in Ohio v. Port Clinton Fish Co., 43 Ohio St.3d 93, 538 N.E.2d 1055, 1057, cert. denied, 493 U.S. 892, 110 S.Ct. 238, 107 L.Ed.2d 189 (1989); see also Ohio Fish Producers Ass'n v. Teater, No. C82-363 (N.D.Ohio Feb. 12, 1982) (finding no discrimination in application of similar statutes); cf. Solis v. Miles, 524 F.Supp. 1069, 1075 (S.D.Tex.1981) (agreeing that similar Texas statute is not discriminatory).
 
 
 10
 The plaintiffs attempted to evidence discriminatory purpose by suggesting that the actual goal of the statutes was to promote the economic interests of Ohio's tourism industry at the expense of Ohio's commercial fishing industry. It is doubtful that this accusation could be supported;[2] even were it true, the allocation of natural resources among competing user groups "is not per se violative of the Constitution." Solis, 524 F.Supp. at 1074 n. 6 ("Considering the number of people involved in sport fishing, compared to commercial fishing, the relative impact each has on fish populations, and the comparative economic benefits of both activities, this particular allocation is neither arbitrary nor capricious nor infringes upon any fundamental rights.").[3]
 
 
 11
 Because the statutes cannot be classified as simple economic protectionism, "the controlling question is whether the incidental burden imposed on interstate commerce by [the statutes] is 'clearly excessive in relation to the putative local benefits.' " Clover Leaf, 449 U.S. at 472, 101 S.Ct. at 728 (quotation omitted). The parties concede that these regulations were promulgated pursuant to Ohio's legitimate police power to efficiently manage its fisheries. See Baldwin v. Fish & Game Comm'n of Mont., 436 U.S. 371, 390, 98 S.Ct. 1852, 1863-64, 56 L.Ed.2d 354 (1978); New York Trawlers, 16 F.3d at 1309-10 ("The interest of a state in regulating the taking of its fish and wildlife resources has been long established."). The local benefits of the law would appear to outweigh any burden imposed on interstate commerce: "Even granting that the [food industry or commercial fishing industry] is burdened relatively more heavily than the [sport fishing industry], we find that this burden is not "clearly excessive" in light of the substantial state interest in promoting conservation of ... natural resources." Clover Leaf, 449 U.S. at 473, 101 S.Ct. at 728-29.
 
 
 12
 The plaintiffs argue, however, that the statutes no longer promote conservation. Rather, they assert that the statutes exist to benefit sport fisherman.[4] Assuming arguendo the truth of this notion,[5] statutes or regulations that favor sport fishing over commercial fishing may themselves reflect legitimate state interests. See Port Clinton Fish Co., 538 N.E.2d at 1057-58 (Holmes, J., concurring); Burns Harbor Fish Co., Inc. v. Ralston, 800 F.Supp. 722, 731 (S.D.Ind.1992). Consequently, the plaintiffs are unable to show that the commercial fishing restrictions excessively burden interstate commerce relative to the local benefits.
 
 
 13
 The plaintiffs are unable to show either that the statutes are "simple economic protectionism" or that the burden imposed on interstate commerce by the statutes is "clearly excessive." These commercial fishing restrictions are thus within the limits imposed on Ohio by the Commerce Clause.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The Honorable Julia S. Gibbons, Chief United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 OHIO REV.CODE ANN. § 1533.63 provides,
 No licensed commercial fisherman ... shall take walleye ... from Lake Erie or its tributaries, or possess such fish aboard a boat used in commercial fishing.... Walleye ... originating from outside of this state may be possessed for sale.... No person shall trade, buy, sell, possess, or transport for sale walleye ... taken from waters in this state.
 OHIO ADMIN. CODE § 1501:31-3-01 provides that "it shall be unlawful for any person to take or attempt to take yellow perch ... with any commercial fishing device in the Lake Erie fishing district except from May first to December thirty-first of each year."
 
 
 [2]
 In Clover Leaf, the Minnesota legislature passed a statute that banned retail sale of milk in plastic nonreturnable, nonrefillable containers, but permitted sale in other nonreturnable, nonrefillable containers, such as paperboard milk cartons. Clover Leaf, 449 U.S. at 458, 101 S.Ct. at 721. Ostensibly passed to solve the solid waste management problem caused by nonrecyclable milk containers, the statute also had the effect of "promot[ing] the economic interests of certain segments of the local dairy and pulpwood industries at the expense of the economic interests of other segments of the dairy industry and the plastics industry." Id. at 460, 101 S.Ct. at 722. The Supreme Court responded by "assum[ing] that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces us to conclude that they 'could not have been a goal of the legislation.' " Id. at 471 n. 15 & 463 n. 7, 101 S.Ct. at 727 n. 15 & 722 n. 7 (quotation omitted)
 Regarding the statutes at issue, the Ohio Supreme Court has confirmed that the legislative purpose is "[o]bviously ... protection and conservation of wildlife, a legitimate state interest." Port Clinton Fish Co., 538 N.E.2d at 1057. With the deference given to the stated goals of legislation, the plaintiffs would have a difficult time proving that the Ohio legislature was motivated by other ends.
 
 
 [3]
 The plaintiffs also advance the novel claim that a discriminatory purpose can be found because the statutes promote Ohio's sport fishing industry at the expense of the United States food industry. While containing a more apparent interstate commerce claim, this argument fails for the same reasons
 
 
 [4]
 The plaintiffs argue that while the original purpose of the regulation may have been to preserve the species from extinction, the adverse ecological impact to preclude the taking of walleye is no longer viable. This question is better submitted to the legislature. See City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom ... of legislative policy determinations.")
 
 
 [5]
 Ohio courts have determined that similar statutes and regulations are legitimate "conservation measures" within the police power of the state of Ohio. See e.g., Port Clinton Fish Co., 538 N.E.2d at 1056-57; Salasnek Fisheries, Inc., v. Cashner, 9 Ohio App.2d 233, 224 N.E.2d 162, 164 (1967)